

**FILED**

NOV 1 7 2021

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NOBLE T. BUCHANNON,<br><br>    Plaintiff,<br><br>v.<br><br>ASSOCIATED CREDIT SERVICES,<br>INC., a Massachusetts corporation,<br><br>    Defendant. | Case No.: 3:20-cv-02245-BEN-LL<br>**Related Case No.:** 4:20-cv-00402<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND ATTORNEY'S FEES AND COSTS**<br><br>**[ECF No. 28]** |

## I.   <u>INTRODUCTION</u>

Plaintiff NOBLE T. BUCHANNON ("Plaintiff") brings this action, alleging one claim for relief for violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (the "FDCPA") against Defendant ASSOCIATED CREDIT SERVICES, INC. ("Defendant"). Complaint, ECF No. 1 ("Compl."); *see also* First Amended Complaint, ECF No. 9 ("FAC").

Before the Court are Plaintiff's Motions for Default Judgment against Defendant and Motion for Attorney Fees and Costs (the "Motions"). ECF No. 28. The Motions were submitted on the papers without oral argument pursuant to Civil Local Rule 7.1(d)(1) and Rule 78(b) of the Federal Rules of Civil Procedure. ECF No. 32. After considering the papers submitted, supporting documentation, and applicable law, the Court **GRANTS** both Motions but reduces the amount of damages Plaintiff may recover.

## II.   BACKGROUND

### A.   Statement of Facts

Plaintiff alleges that on March 30, 2020, he received a letter to him stating he owed a debt.  Compl. at 7, ¶ 60.[1]  He further pleads that on or about April 2020, he checked his consumer credit report and noticed a collection tradeline furnished by Defendant with a balance of $180.00 allegedly owed to TD Ameritrade, Inc. (the "Alleged Debt").  *Id.* at 7, ¶ 56.

On or about April 29, 2020, Plaintiff sent a letter to Defendant disputing the Alleged Debt and requesting verification thereof pursuant to 15 U.S.C. § 1692g(b).  Compl. at 7, ¶ 59; *see also* Exhibit 2 to Declaration of Lauren B. Veggian, ECF No. 28-3 ("Veggian Decl.") at 7 (attaching the April 29, 2020 letter from Plaintiff to Defendant disputing the debt discussed in March 30, 2020 letter).

On June 16, 2020, Defendant responded to Plaintiff's letter providing "verification of the debt as per your request."  *See* Exhibit 3 to Veggian Decl., ECF No. 28-3 at 9-10 (attaching a June 16, 2020 letter providing verification of the debt along with a TD Ameritrade Statement for Account No. 490-207581 showing a margin loan in the amount of $183.47 with a balance of $179.77 owed).  On June 26, 2020, Plaintiff's Trans Union Credit Report shows that Defendant re-reported the debt and failed to report that the debt was disputed.  Exhibit 4 to Veggian Decl., ECF No. 28-3 at 12.  As of August 1, 2020, Defendant had also failed to communicate to Equifax, a consumer reporting agency, that the Alleged Debt was disputed by Plaintiff.  Compl. at 7, ¶ 61.  Plaintiff alleges that Defendant materially lowered his credit score by failing to note Plaintiff's dispute of the Alleged Debt.  *Id.* at 8, ¶ 64.

### B.   Procedural History

On August 7, 2020, Plaintiff filed his complaint in the United States District Court for the Northern District of Florida (the "Florida District Court") against Defendant,

---

[1]   Unless otherwise indicated, all page number references are to the ECF-generated page number contained in the header of each ECF-filed document.

alleging one claim for relief for violation of the FDCPA.  FAC; *see also* Motion, ECF No. 28-1 ("Mot.") at 6:9-12.

On September 1, 2020, Defendant timely filed a Motion to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure and Request for Judicial Notice.  ECF Nos. 5, 6.

On September 18, 2020, the Florida District Court noted that Plaintiff had failed to file a response to Defendant's motion and ordered Plaintiff to do so.  ECF No. 7.  Rather than filing a response, on September 26, 2020, Plaintiff filed an Amended Complaint.  ECF No. 9.  That same day, Plaintiff also consented to Defendant's Request for Judicial Notice, ECF No. 8, and filed an objection to Defendant's Motion to Dismiss, claiming the motion was moot due to Plaintiff's filing of an amended complaint, ECF No. 10.

On September 28, 2020, however, the Florida District Court issued an order (1) granting Defendant's Request for Judicial Notice; (2) striking Plaintiff's amended complaint, noting Plaintiff had not only failed to timely respond to Defendant's motion to dismiss for lack of personal jurisdiction but had also filed an amended complaint without seeking leave of Court, in violation of Rule 15 of the Federal Rules of Civil Procedure; and (3) requiring Plaintiff to file a response to Defendant's Motion to Dismiss by October 2, 2020.  ECF No. 11.

On October 2, 2020, Plaintiff opposed Defendant's Motion to Dismiss, arguing that the Florida District Court had personal jurisdiction over Defendant.  ECF No. 12.  On October 19, 2020, however, the Court issued an order granting Defendant's Motion to Dismiss for Lack of Personal Jurisdiction, dismissing the complaint, and ordering Plaintiff to move for leave to amend the complaint or move to transfer the case to another district.  ECF No. 16.

On November 9, 2020, Plaintiff filed a Motion to Transfer the case to the United States District Court for the Southern District of California, "where the events giving rise to Plaintiff's claim occurred."  ECF No. 17.  On November 10, 2020, Defendant filed a response, indicating it did not oppose Plaintiff's request to transfer the case.  ECF No. 18.

As a result, on November 16, 2020, the Florida District Court rescinded its previous order dismissing the complaint but granted the parties' request to transfer the case to the United States District Court for the Southern District of California. ECF No. 19.

On November 18, 2020, the case was transferred from the Florida District Court to the Southern District of California. ECF No. 19.

On March 24, 2021, Plaintiff's counsel filed a Request for Entry of Default. ECF No. 26. On April 5, 2021, the Clerk entered Defendant's default. ECF No. 27.

On May 5, 2021, Plaintiff filed the instant Motion for Default Judgment and Motion for Attorneys' Fees and Costs. ECF No. 28. On May 24, 2021, Defendant opposed. Opposition, ECF No. 30 ("Oppo."). On May 28, 2021, Plaintiff replied. Reply, ECF No. 31 ("Reply").

## III.   LEGAL STANDARD

Rule 12(a)(4)(A) of the Federal Rules of Civil Procedure provides that where "the court denies the motion [to dismiss] . . . , the responsive pleading must be served within 14 days after notice of the court's action." "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." FED. R. CIV. P. 55(a).

### A.   Motion for Default Judgment

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." FED. R. CIV. P. 55(a). Upon entry of default, Federal Rule of Civil Procedure 55(b)(2) provides for the entry of default judgment by the Court. Courts considering a motion for default judgment begin their analysis by deferring to "the general rule that default judgments are ordinarily disfavored" because "[c]ases should be decided upon their merits whenever reasonably possible." *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 616 (9th Cir. 2016) (quoting *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986)). Consequently, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." *DFSB Kollective Co. v. Bourne*, 897 F. Supp. 2d 871, 877

(N.D. Cal. 2012) (quoting *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F.Supp.2d 1172, 1174 (C.D. Cal. 2002)).  However, courts have discretion to grant a default judgment were appropriate. *See Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988).  The Ninth Circuit has set forth seven factors, known as the *Eitel* factors, that a district court should consider when evaluating a motion for default judgment:

> (1) the possibility of prejudice to plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning the material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel*, 782 F.2d at 1471-72.  "None of the factors is dispositive in itself; instead, [courts] must balance all seven." *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1488 (9th Cir. 1993), *holding modified on other grounds by Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006).

In determining the merits of a motion for default judgment, the well-pleaded factual allegations are taken as true, except as to allegations regarding the amount of damages. *See Fair Housing of Marin v. Combs,* 285 F.3d 899, 906 (9th Cir. 2002); *TeleVideo Sys., Inc. v. Heidenthal,* 826 F.2d 915, 917-18 (9th Cir. 1987).

**B.     Motion for Attorney's Fees and Costs**

"Once a party is found eligible for fees, the district court must then determine what fees are reasonable." *Klein v. City of Laguna Beach*, 810 F.3d 693, 698 (9th Cir. 2016) (citation omitted).  "To determine the amount of a reasonable fee, district courts typically proceed in two steps: first, courts generally apply the lodestar method to determine what constitutes a reasonable attorney fee; and second, the district court may then adjust the lodestar upward or downward based on a variety of factors, including the degree of success obtained by the plaintiffs." *Bravo v. City of Santa Maria*, 810 F.3d 659, 665-66 (9th Cir. 2016).  The Supreme Court has indicated that the degree of success obtained is "'the most

critical factor' in determining the reasonableness of a fee award." *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)). "It is an abuse of discretion for the district court to award attorneys' fees without considering the relationship between the 'extent of success' and the amount of the fee award." *McGinnis v. Ky. Fried Chicken*, 51 F.3d 805, 810 (9th Cir.1994) (quoting *Farrar*, 506 U.S. at 116).

"The Supreme Court has instructed that the initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate, an approach commonly known as the lodestar method." *Vargas v. Howell*, 949 F.3d 1188, 1194 (9th Cir. 2020) (internal quotations omitted) (citing *Blum v. Stenson*, 465 U.S. 886, 888 (1984)); *see also Hensley*, 461 U.S. at 433 ("The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."); *Christensen v. Stevedoring Servs. of Am*, 557 F.3d 1049, 1053 (9th Cir. 2009) (noting that in determining whether an award of attorneys' fees is reasonable, the lodestar method is the fundamental starting point); *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001). The party seeking attorneys' fees bears the burden of "submitting evidence of the hours worked," the rate charged, and that "the rate charged is in line with the prevailing market rate of the relevant community." *Carson v. Billings Police Dep't.*, 470 F.3d 889, 891 (9th Cir. 2006) (internal quotation omitted). "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433; *see also G & G Closed Circuit Events, LLC v. Pacheco*, No. 18-cv-00462-BTM-AGS, 2019 U.S. Dist. LEXIS 125110, at *4 (S.D. Cal. Jul. 25, 2019) (Moskowitz, J.) (applying the lodestar method to determine the reasonableness of a motion for fees and costs brought by Mr. Riley on Plaintiff's behalf in a different case).

If the moving party in a fee motion "satisfies its burden of showing that the claimed rate and number of hours are reasonable, the resulting product is presumed to be the reasonable fee." *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622-23 (9th Cir. 1993). However, "[i]n determining the reasonableness of the award, there must be some evidence

to support the reasonableness of, *inter alia*, the billing rate charged, and the number of hours expended." *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1068 (Fed. Cir. 1983). In this regard, courts consider twelve factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Hensley*, 461 U.S. at 430 n.3.

## IV.   **DISCUSSION**

As a preliminary matter, Defendant argues in its Opposition to the instant Motion, "[t]here is no amended complaint on file presently in this matter." Oppo. at 15:5-6. Of course, this issue is critical to the Court's ruling on this matter because if no operative complaint exists, default judgment would be improper. The Court finds this issue is complicated, but as set forth below, it concludes an operative complaint does exist.

On August 7, 2020, Plaintiff filed the original complaint. ECF No. 1. On September 1, 2020, Defendant moved to dismiss that complaint, ECF No. 5, and Plaintiff failed to respond, resulting in the Florida District Court ordering Plaintiff to respond on September 18, 2020, ECF No. 7. On September 26, 2020, Plaintiff responded while simultaneously filing an amended complaint. ECF No. 10. This opposition to Defendant's motion to dismiss merely stated that Plaintiff objected to the motion as moot due to his filing of an amended complaint. ECF No. 10 at 1. However, an amendment without first seeking leave of the Court may only be filed within the earlier of twenty-one (21) days after (1) serving the complaint *or* (2) service of a responsive pleading. FED. R. CIV. P. 15(a)(1). In this case, twenty-one (21) days after serving the complaint, which took place on August 11,

2020, would be September 1, 2020, and twenty-one (21) days after service of Defendant's Motion to Dismiss would have ben September 22, 2020.  As a result, on September 28, 2020, the Florida District Court struck Plaintiff's FAC and ordered Plaintiff to oppose Defendant's Motion to Dismiss the original complaint.  ECF No. 11 at 2.  Based on this ruling, the original complaint remained the operative complaint.  However, on October 29, 2020, the Florida District Court granted Defendant's Motion to Dismiss and ordered "the original complaint (ECF No. 1) is DISMISSED."  ECF No. 16 at 5.  Nonetheless, it also allowed Plaintiff ten (10) days to either (1) move for leave to amend the complaint or (2) move to transfer the case to another district.  *Id.*  On November 9, 2020, Plaintiff moved to transfer, ECF No. 17, which the Court granted on November 16, 2020, ECF No. 19.  In its order, however, the Court noted that "[t]he October 29, 2020 order is rescinded to the extent it dismissed the complaint."  ECF No. 19 at 2.  Thus, the original complaint became the operative complaint again.

Further, because the Florida District Court denied Defendant's Motion to Dismiss for Lack of Personal Jurisdiction on November 16, 2020, Defendant needed to file a responsive pleading within fourteen (14) days, FED. R. CIV. P. 12(a)(4)(A), or at the latest by Tuesday, December 1, 2020.  *See also* Reply at 3:1-2 (noting that "Defendant had 14 days from November 16, 2020, to answer the Complaint).  "[A] motion to transfer venue under 28 U.S.C. § 1404(a) does not stay the time to file a responsive pleading."  *Mgmt. Registry, Inc. v. Batinich*, No. CV 18-1147 (JRT/TNL), 2018 WL 3621036, at *2, n.2 (D. Minn. July 30, 2018).  To date, Defendant did not respond; thus, the Court properly entered Defendant's default.

Next, the Court notes that when ruling on a motion for default judgment, "a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties" given that "[a] judgment entered without personal jurisdiction over the parties is void."  *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).  Thus, "[t]o avoid entering a default judgment that can later be successfully attacked as void, a court should determine whether it has the power, i.e., the jurisdiction, to enter the judgment in the first place."  *Id.*; *see also*

*Facebook, Inc. v. Pedersen*, 868 F. Supp. 2d 953, 961 (N.D. Cal. 2012) (adopting the report and recommendation of the magistrate judge to "deny Facebook's motion for default judgment and ... dismiss this action for lack of personal jurisdiction").

As to jurisdiction, under 28 U.S.C. § 1331, "[t]he district courts . . . have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." The FDCPA, in turn, provides that "[a]n action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction." 15 U.S.C. § 1692k(d). Thus, the Court has original subject matter jurisdiction over the claims in this case pursuant to the FDCPA. *See* 13 U.S.C. § 1331. Plaintiff also argues that the Court has personal jurisdiction over Defendant because Defendant (1) reached out to contact Plaintiff while Plaintiff was living in California and (2) operates its business in California. Mot. at 10:3-10. Because Defendant appeared to oppose the Motion (as to damages only) and did not object to personal jurisdiction, the Court also finds personal jurisdiction appropriate. Plaintiff also argues that venue is appropriate in this District because "Defendant directly targets business activities toward consumers in California and caused harm to Plaintiff within this Judicial District." Mot. at 10:1-2. The Court agrees. *See, e.g.*, 28 U.S.C. § 1391(b) (providing that venue is appropriate in any judicial district in which (1) "any defendant resides" or (2) "a substantial part of the events or omissions giving rise to the claim occurred").

Finally, "[t]he Court is also required to assess the adequacy of the service of process on the party against whom default is requested." *DFSB*, 897 F. Supp. 2d at 877-78 (internal quotations omitted). Here, Plaintiff personally served the complaint on a person authorized to accept service of process on Defendant's behalf. ECF No. 4. Thus, service of process was adequate. Having established jurisdiction over this case, concluded that service of process was proper, and found venue appropriate, alleviating any concern the judgment will be found void, the Court turns to the merits of Plaintiff's Motion.

///

### A.     **Motion for Default Judgment**

Again, Defendant, although appearing to oppose damages, does not address the *Eitel* factors. However, as set forth below, the Court finds those factors weigh in favor of the Court entering a default judgment in this case.

#### 1.     *The Possibility of Prejudice to the Plaintiff*

"Under the first *Eitel* factor, the Court must examine whether Plaintiff will be prejudiced if the Court denies its request for entry of default judgment." *IO Grp., Inc. v. Jordon*, 708 F. Supp. 2d 989, 997 (N.D. Cal. 2010) (citing *Eitel*, 782 F.2d at 1471–72). Plaintiff argues that he would suffer prejudice if the Court does not grant a default judgment because he has been harmed by Defendant.

#### 2.     *The Merits of the Substantive Claim*

The second and third *Eitel* factors "require that a plaintiff state a claim on which the [plaintiff] may recover." *PepsiCo*, 238 F. Supp. 2d at 1175 (alteration in original); *see also Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978). A complaint satisfies this test when the claims "cross the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009). As noted, the Court may treat as true those allegations in the complaint except those relating to damages. *TeleVideo*, 826 F.2d at 917-18.

Here, Plaintiff argues that taking the allegations of the Complaint as true along with "the June 2020 TransUnion credit report showing that the account at issue is not being reported as disputed, shows that Plaintiff's claims are meritorious." Mot. at 11:10-13 (citing Exhibit 4 to Mot.). Thus, Plaintiff argues this satisfies the second *Eitel* factor. Mot. at 11:13.

#### 3.     *The Sufficiency of the Complaint*

Plaintiff argues that his Complaint "sufficiently pleads the facts necessary to fulfill each and every element of all of the claims alleged" in satisfaction of the third *Eitel* factor. Mot. at 11:13-24.

In order to state a claim under the FDCPA, Plaintiff must allege facts demonstrating: "(1) that he is a consumer within the meaning of 15 U.S.C. §§ 1692(a)(3) and 1692c(d);

-10-

(2) that the debt arises out of a transaction entered into for personal purposes; (3) that the defendant is a debt collector within meaning of 15 U.S.C. 1692a(6); and (4) that the defendant violated one of the provisions of the FDCPA, 15 U.S.C. §§ 1692a–1692o." *Tran v. Select Portfolio Servicing, Inc.*, No. 14-CV-05404-HSG, 2015 WL 1739370, at *2 (N.D. Cal. Apr. 14, 2015).

Plaintiff's Complaint alleges that (1) he is a consumer as defined by 15 U.S.C. § 1692a(3), Compl. at 4, ¶ 20; (2) the debt arose out of a transaction primarily for personal purposes, *id.* at 4, ¶ 19; (3) Defendant is debt collector as defined by 15 U.S.C. § 1692a(6), *id.* at 6, ¶ 53; and (4) "Defendant violated 15 U.S.C. § 1692e(8) by failing to communicate to consumer reporting agencies that the subject alleged debt was disputed by Plaintiff," Compl. at 10, ¶ 78. The provision of the FDCPA that Plaintiff alleges Defendant violated prohibits debt collectors from "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8). Here, the Complaint further alleges that "[o]n or about April 29, 2020, Plaintiff wrote and sent a letter via United Postal Service mail to Defendant disputing the alleged debt and requesting verification of the alleged debt pursuant to the provisions of 15 U.S.C. § 1692g(b)." Compl. at 7, ¶ 59. It also pleads that (1) "[o]n or about May 2020, Defendant knew or should have known that Plaintiff disputed the alleged debt because Plaintiff notified Defendant of the dispute," and (2) despite this, "Defendant failed to thereafter communicate to one or more consumer reporting agencies that the alleged debt was disputed, in violation of 15 U.S.C. § 1692e(8)" by reporting the alleged debt to Equifax. *Id.* at 9, ¶¶ 67-68.

The Court agrees with Plaintiff that the Complaint sufficiently alleges a FDCPA violation.

### 4. *The Sum of Money at Stake in the Action*

Under the fourth *Eitel* factor, a court considers the amount of money at stake in relation to the seriousness of a party's conduct. *PepsiCo*, 238 F. Supp. 2d at 1176-77.

"Default judgment is disfavored when a large amount of money is involved," or the amount sought appears "unreasonable in light of the potential loss caused by the defendant's actions." *HICA Educ. Loan Corp. v. Warne*, Case No. 11-cv-04287-LHK, 2012 WL 1156402, at *3 (N.D. Cal. Apr. 6, 2012) (citations and internal quotation marks omitted).

Plaintiff argues the fourth *Eitel* factor is met because "[t]he sum of money at stake in this action is the maximum statutory damages amount of $1,000, plus costs, and reasonable attorneys' fees per the statute (which are discussed below in the costs and fees section)." Mot. at 11:25-27. The Court agrees that the sum of money at stake is reasonable and satisfies this factor.

### 5. *The Possibility of a Dispute Concerning the Material Facts*

On November 16, 2020, the Northern District of Florida rescinded its previous October 29, 2020 Order dismissing this case to the extent it dismissed this case, and instead, transferred this case to this District. ECF No. 19 at 2. Because Defendant only moved to dismiss on the basis that the Court lacked jurisdiction, rather than on the basis that the Complaint failed to state a claim for relief, Defendant needed to respond to the Complaint upon transfer. Consequently, Defendant has not filed an answer or otherwise responded to the operative complaint. This failure to appear leaves the Court with an absence of any facts—let alone material facts—in dispute. In such cases, courts routinely find that no factual dispute exists, and that therefore, this *Eitel* factor weighs in favor of granting default judgment. *See, e.g., Garcia Pacheco*, 2019 WL 2232957, at *4; *G&G Closed Circuit Events, LLC v. Aguilar*, Case No. 18-cv-0465-JM-BGS, 2018 WL 3656118, at *2 (S.D. Cal. Jul. 31, 2018).

Plaintiff also argues that "Defendant cannot, in good faith, dispute the material facts of this case, specifically, because the causes of action alleged are based on strict liability statutes." Mot. at 12:1-2. Indeed, "the FDCPA is a strict liability statute in that a plaintiff need not prove an error was intentional." *Reichert v. Nat'l Credit Sys., Inc.*, 531 F.3d 1002, 1004 (9th Cir. 2008). "[A] single violation of section 1692e is sufficient to establish civil liability under the FDCPA." *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62 (2d

Cir. 1993) (citing 15 U.S.C. § 1692k).  Plaintiff points out that he "has documentation showing the dispute he mailed to Defendant dated April 29, 2020, documentation proving Defendant received the dispute, and documentation showing that as of June 26, 2020, the account was re-reported by Defendant to Plaintiff's credit, without the "disputed" notation." Mot. at 12:3-7 (citing Exhibits 2 through 4).  The Court agrees that based upon this information, strict liability would apply.

As such, the possibility of a good faith dispute of material facts is low, and the fifth *Eitel* factor weighs in favor of granting this motion for entry of default judgment.

### 6.   *Whether the Default was due to Excusable Neglect*

While the Court "may consider whether there are circumstances surrounding a party's failure to respond [that] constitute[] excusable neglect … a court may find excusable neglect to be lacking where a defendant was properly served with the complaint and notice of default judgment." *H.I.S.C., Inc. v. Franmar Int'l Importers, Ltd.*, Case No. 16-cv-480-BEN-WVG, 2018 WL 8648381, at *3 (S.D. Cal. Apr. 4, 2018) (citations omitted).

Plaintiff argues that "[t]he default of Defendant was not likely due to excusable neglect" given Defendant was properly served with the complaint and motion.  Mot. at 12:13.  Further, Plaintiff also points out that "Defendant responded to the lawsuit as filed in Florida with a Motion to Dismiss (granted and then overturned), and a nonopposition to the motion to transfer which landed this case in this Court." Mot. at 12:13-15.  Defendant contends that although it knew the case was being transferred, "it did not receive notice that the file had been received in the Southern District of California nor did it receive any notice of the subsequent activity in the matter such as its default being entered." Oppo. at 5:23-26.  Defendant posits that this likely due to the CM-ECF system using a previous e-mail address for its counsel, Lauren Burnette, from when she worked on several cases that were transferred to the Southern District of California several years ago rather than the e-mail address on file with the Florida District Court. *Id.* at 5:23-6:26; *see also* ECF No. 30-13 at 2 (showing Ms. Burnette as the only attorney representing Defendant and her e-mail

-13-

address as lburnette@messerstrickler.com). However, Defendant does not provide the Court with the previous e-mail address or any evidence of docket entries in this case using that address. Further, Ms. Burnette is not the lead attorney to be noticed on the docket. Timothy P. Johnson is the lead attorney. Defendant offers no explanation for why Mr. Johnson may not have received notice of his client's default. Moreover, given the case was transferred in November 2020, and Plaintiff's default was not taken until almost six months later, it was not reasonable for both Mr. Johnson and Ms. Burnette to fail to follow up with Plaintiff or his counsel, check the docket for activity, or file a responsive pleading. Regardless, Defendant notes that although it contends it could challenge the entry of default against it, "the decision was made to simply bring the case to a swift conclusion by not moving to set aside the default, but rather to address the damage claims sought by Plaintiff." Oppo. at 6:8-13. Thus, Defendant has opposed this Motion but only with respect to damages and attorney's fees, not as to the entry of default. Consequently, the Court finds that excusable neglect is not present.

As such, the sixth *Eitel* factor is met and weighs in favor of granting this motion for entry of default judgment.

### 7. *The Strong Policy Underlying the Federal Rules of Civil Procedure Favoring a Decision on the Merits*

The policy favoring resolution of the case on the merits always weighs against default judgment. *NewGen*, 840 F.3d at 616. In this case, however, the other *Eitel* factors outweigh this general policy because Defendant's "failure to answer Plaintiff's Complaint makes decision on the merits impractical, if not impossible." *PepsiCo*, 238 F. Supp. 2d at 1177. Plaintiff argues that "even though the policy underlying the FRCP favors decisions on the merits, Defendant has been given plenty of time to appear in this case and defend itself against the allegation," but instead, has "clearly chosen not to defend itself." Mot. at 12:21-24. The Court agrees that in light of Defendant's decision not to appear, default judgment is appropriate despite policy favoring decisions on the merits.

Accordingly, Plaintiff's Motion for Default Judgment is **GRANTED**.

-14-

### B.   **Damages**

Under the FDCPA, "any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of" (1) the plaintiff's actual damages; (2) "such additional damages as the court may allow, but not exceeding $1,000"; and (3) "the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a).

Plaintiff's Complaint seeks the following damages: (1) "[a]ctual damages in an amount to be determined by the Court or jury pursuant to the provisions of 15 U.S.C. § 1692a(1)"; (2) "[s]tatutory damages of up to $1,000.00 (U.S.) pursuant to the provisions of 15 U.S.C. § 1692a(2)(A)"; (3) "[c]osts of this action pursuant to the provisions of 15 U.S.C. § 1692a(3)"; and (4) "[a]ttorney's fees pursuant to the provisions of 15 U.S.C. § 1692a(3)." Compl. at 14. In Plaintiff's Motion, Plaintiff seeks the following amounts:

| Item: | Amount: | Support: |
|---|---|---|
| **Actual Damages:** | $1,000.00 | Compl. at 10, ¶ (a). |
| **Statutory Damages:** | $1,000.00 | Compl. at 10, ¶ (b). |
| **Costs:** | $430.00 | Compl. at 10, ¶ (c). |
| **Attorney's Fees:** | $31,646.00 | Compl. at 10, ¶ (d). |
| **TOTAL:** | **$40,768.50** | |

Mot. at 21:1-5; Reply at 11:18-23.

Defendant filed an Opposition to Plaintiff's Motion for Default Judgment, which argues that although it contends it could challenge the entry of default against it, it has, instead, chosen to address Plaintiff's damages only. Oppo. at 5:4-10, 6:8-13. Defendant contends that (1) Plaintiff's sought after "actual damages" and statutory damages are entirely unsubstantiated, and thus, should not be awarded, and (2) many of Plaintiff's billing entries are unnecessary and/or excessive, and thus, the Court should reduce the attorneys fees Plaintiff seeks. *Id.* at 17:15-19. Plaintiff replies by arguing that a defaulted party may not appear to contest damages. Reply at 4:8-11. He argues that that the Court should "not consider Defendant's arguments against Plaintiff's evidence of actual damages, statutory damages, costs, and reasonable attorneys' fees, to include the

reasonableness of the rates requested by Plaintiff's counsels." *Id.* He contends that "Defendant has no legal basis on which to present evidence contrary to Plaintiff's allegations, and has improperly done so in its opposition to this motion." *Id.* at 4:11-13.

Defendant cites to three cases as authority for a defaulted defendant's ability to challenge damages sought in a motion for default judgment after a defendant's default has been entered: *Solomon v. Jacobson*, No. 15-cv-01453-VAP-JPRX, 2016 U.S. Dist. LEXIS 187741, 2016 WL 6023821 (C.D. Cal. July 6, 2016); *City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 132 (2nd Cir. 2011), and *Wells Fargo Bank v. Beltran (In re Beltran)*, 182 B.R. 820, 824 (B.A.P. 9th Cir. 1995). Oppo. at 6:16-7:2. First, in *Wells Fargo Bank v. Beltran (In re Beltran)*, the Ninth Circuit's Bankruptcy Appellate Panel affirmed the lower court's entry of judgment in favor of the debtors following a default prove up hearing and denial of the creditor's motion for default judgment. 182 B.R. at 822. The court reasoned that given the creditor had subpoenaed the debtor to testify as a witness at the default prove up hearing, it could not "now be heard to argue that the [debtors]' default rendered them 'silent' concerning the presentation of evidence contrary to the [debtors]' allegations." *Id.* at 824. Thus, the court "conclude[d] that the bankruptcy court properly considered [the debtor]'s testimony at the default prove up hearing." *Id.*

Plaintiff replies that this case is completely different from *Beltran* because unlike the *Beltran* debtor, Defendant "participated heavily in the case when it was filed in Florida, knew it was being transferred, and then took no action to either ensure it was receiving notifications or ensure it was properly litigating the case." Reply at 3:20-23. Thus, Plaintiff argues this means "Defendant has no legal basis on which to present evidence contrary to Plaintiff's allegations, and has improperly done so in its opposition to this motion." *Id.* at 4:11-13. However, the Court agrees that like the *Beltran* debtor, who despite having been defaulted, could appear to present evidence at the prove up hearing, Defendant may appear now to present evidence or oppose Plaintiff's evidence of damages. This is bolstered by the other case relied upon by Defendant, *City of N.Y. v. Mickalis Pawn Shop, LLC*, in which the Second Circuit Court of Appeals noted that "[t]he entry of a default, while establishing

liability, 'is not an admission of damages.'" 645 F.3d at128 (citing *Finkel v. Romanowicz,* 577 F.3d 79, 83 n.6 (2d Cir. 2009)).

Finally, in *Solomon v. Jacobson*, the court granted the plaintiff's motion for default judgment while also granting the defendants' application for a punitive damages hearing. 2016 WL 6023821, at *11. The *Solomon* defendants had answered the complaint, but the Court later struck the answer because the defendant failed to participate in the case by failing to respond to discovery. *Id.* Once the defendant's default had been taken, the court also denied his motion to set aside the default, finding the defendant had read e-mails from opposing counsel regarding the case, despite his claims to the contrary. *Id.* The court interpreted Rule 55(b)(2)(B) of the Federal Rules of Civil Procedure as allowing a defaulted defendant to challenge damages. *Id.* Thus, because the defendants "answered the original complaint [and] then defaulted," they may "appear and defend [themselves] during the hearing on damages." *Id.* (citing Schwarzer, Tashima & Wagstaffe, *Federal Civil Procedure Before Trial* §§ 1 6:44 (Rutter Group) (2016)).

Plaintiff argues that *Solomon* merely allowed the defendant to appear at the punitive damages hearing and defend itself, but that it was "not a ruling as to whether a defendant is permitted to respond to any damage claims." Reply at 3:6-9. The Court disagrees. The Court finds that as the *Mickalis* court noted, a default may establish liability but does not qualify as an admission on damages. There are many instances where a defendant may want to reduce attorney's fees and costs by admitting liability but challenge damages, and preventing a defendant from doing so would not serve the interests of judicial economy. More importantly, Plaintiff suffers no prejudice by the Court's consideration of Defendant's arguments because even if Defendant had not opposed Plaintiff's requested damages, the Court would have scrutinized Plaintiff's damages and found them unsubstantiated and excess.

### 1. *Actual Damages*

The FDCPA authorizes courts to award actual or compensatory damages for a defendant debt collector's unlawful debt collection and/or credit reporting activities. 15

U.S.C. § 1692k(a).   Plaintiff seeks $1,000.00 in actual damages but sets forth no information as to the basis for those actual damages.  Mot. at 14:1-26.  Instead, Plaintiff merely argues that "[a]ctual damages have been awarded by other [c]ourts on default judgment where the damages alleged in the Complaint have been deemed admitted due to lack of response."  *Id.* at 14:7-10 (citing *Jackson v. TeleRecovery*, No. 2:20-CV-01569-KOB, 2021 WL 633212, at *2 (N.D. Ala. Feb. 18, 2021) (awarding the plaintiff $1,000.00 in actual damages for emotional distress).  Defendant responds that "Plaintiff has submitted no evidence supporting any claim for actual damages," and such "[e]vidence of the damages allegedly suffered by Plaintiff is necessary even for a default judgment."  Oppo. at 7:4-6.  Plaintiff replies that "[t]his situation has caused [him] emotional distress in the form of stress and anxiety, among other negative emotions."  Reply at 4:15-16.

While Plaintiff is correct that "[e]motional distress damages are actual damages under the FDCPA," Reply at 4:23-26, he has failed to substantiate any actual damages like the plaintiffs in the cases on which he relies.  Plaintiff attaches to his reply brief a declaration stating that "[t]he fact that the ACS dispute was not noted on my credit report was stressful for me because I already did not agree with the way ACS was reporting my account, and then they did not even tell people that I disagreed with them."  Declaration of Nobel T. Buchannon, ECF No. 31-2 at 2, ¶ 6.  However, he attaches no additional information regarding actual damages.  He also argues that the $1,000 he requests "is minimal compared to other emotional distress awards in other FDCPA cases[ ] and is proportionate to the amount of harm caused to Plaintiff in this instance."  Reply at 5:2-11 (citing *Jackson*, 2021 WL 633212, at *2; *Bennett v. Am. Med. Response, Inc.*, 226 F. App'x 725, 728 (9th Cir. 2007); *Nelson v. Equifax Info. Servs., LLC*, 522 F. Supp. 2d 1222, 1234 (C.D. Cal. 2007); *Panahiasl v. Gurney*, No. 04-04479 JF, 2007 WL 738642, at *2 (N.D. Cal. Mar. 8, 2007); *GreenPoint Credit Corp. v. Perez*, 75 S.W.3d 40, 46-47 (Tex. App. 2002), *vacated* (Apr. 24, 2003)).

This case is distinguishable from all of the cases cited by Plaintiff as well as other cases located by the Court because in all of the cases where courts awarded emotional

-18-

distress as actual damages under the FDCPA, the plaintiff provided some evidence—whether a declaration or medical bills[2]—of his or her damages, even on a motion for default judgment. *See, e.g.*, *Myers v. LHR, Inc.*, 543 F. Supp. 2d 1215, 1218 (S.D. Cal. 2008) (Miller, J.) (granting default judgment in the plaintiff's favor, which included $90,000.00 in compensatory damages for emotional distress where the plaintiff submitted a declaration attesting to the fact that she suffered from sleeplessness and embarrassment, sought medical treatment of the stress, was prescribed Flexeris to relieve pain, underwent steroid injections for back pain, and was hindered in her ability to timely purchase a home); *see also Jackson*, 2021 WL 633212, at *2 (awarding $1,000.00 in actual damages for the plaintiff's emotional distress in a FDCPA action where the plaintiff provided an affidavit attesting to the fact that the defendant's actions made him feel "alarmed, confused, and distressed"); *Bennett*, 226 F. App'x at 728 (affirming the district court's award of compensatory damages but reversing its award of punitive damages in a case where the district court[3] had awarded $100,000 after issuing a Findings of Fact and Conclusions of Law Regarding Default Judgment finding that the plaintiff had difficulty sleeping and lost some of his hair due to Alopecia Areata and stress); *Nelson*, 522 F. Supp. 2d at 1234-35

---

[2] Here, Plaintiff provided a declaration, but only as an attachment to the reply brief, not the original motion, meaning Defendant had no opportunity to respond, making it inappropriate for the Court's consideration. Where a party presents new evidence in a reply brief, the district court should decline consideration of the new evidence unless it provides the non-moving party an opportunity to respond to such evidence. *Dutta v. State Farm Mut. Auto. Ins. Co.*, 895 F.3d 1166, 1172 (9th Cir. 2018) ("Understanding the potential for unfairness inherent in an unusual submission of new factual matter, the practice rules contemplate relief for the opposing party, but such relief is not limited to simply striking the new matter from consideration."). This declaration, however, was given little weight to the Court as it failed to provide evidence of emotional distress like the plaintiffs in other cases discussed below.

[3] In the underlying decision, *Bennett v. Bay Area Credit Serv., Inc.*, No. CV 03 019 GLB RFC, 2005 WL 5681083, at *2 (D. Mont. Mar. 11, 2005), *aff'd in part, rev'd in part and remanded sub nom. Bennett v. Am. Med. Response, Inc.*, 226 F. App'x 725 (9th Cir. 2007), the district court awarded the plaintiff $3,139.30 for the defendant's violation of the FDCPA, $100,000.00 for extreme emotional distress, frustration, and anger, and $649,000.00 in punitive damages.

(holding that the plaintiff had "submitted sufficient evidence of economic and emotional distress damages to support her FDCPA claim" and survive summary judgment where she "testified at her deposition that, as a result of the disputed Account repeatedly reappearing on her credit report, she feels stigmatized, has fights with her partner, difficulty sleeping, recurring fear, vomiting, and sick stomach"); *Panahiasl*, 2007 WL 738642, at *2 (awarding one plaintiff $50,000.00 and another plaintiff $10,000.00 "for emotional distress based on the declarations submitted" in which the first plaintiff stated she "suffered emotional distress, including: embarrassment, fear, anger, panic, humiliation, nervousness, crying fits, difficulty eating and sleeping, and diarrhea," while the other plaintiff "suffered emotional distress in the form of embarrassment, humiliation, harassment, anger, anxiety, lack of concentration and stress"); *GreenPoint*, 75 S.W.3d at 46-47 (affirming the award of $5,000,000.00 in emotional distress damages to the plaintiff where testimony at trial from a physician confirmed he treated the plaintiff "for a number of ailments including the shingles and a stress related psychological condition," which "[h]e testified that . . . were caused by stress resulting from Mrs. Perez's problems with [the defendant," and the plaintiff testified "as to the painful sores on her body, her embarrassment, anxiety, and emotional pain resulting from [the defendant's threat to put her in jail").

Every one of the cases relied upon by Plaintiff notes that Ninth Circuit precedent requires at least testimony to establish emotional distress damages. *Nelson*, 522 F. Supp. 2d at 1234. Here, Plaintiff's complaint conclusorily alleges that that "Defendant's conduct has caused Plaintiff anger and emotional distress," including but not limited to anger, frustration, financial harm and loss, and a lower credit rating. Compl. at 9, ¶¶ 71-76. Plaintiff's declaration was submitted only with the reply brief, not with the original motion. However, as stated, where a party presents new evidence in a reply brief, the district court should decline consideration of the new evidence unless it provides the non-moving party an opportunity to respond to such evidence. *Dutta*, 895 F.3d at 1172. Plaintiff states in his declaration that "[t]hird parties looking at my credit reports did not know that I disputed and did not agree with the way that ACS was reporting the account to my credit, and that

caused me a significant amount of stress and anxiety." Plaintiff Decl., ECF No. 31-2 at 2, ¶ 5. Although the Court did not consider this declaration, even if it had, it would not support the damages he seeks.

The Court finds that even without considering Plaintiff's declaration submitted with the reply, some actual damages are warranted for the time and stress associated with contesting this issue. Thus, the Court awards Plaintiff $500.00 in emotional distress damages.

### 2.    *Statutory Damages*

Even if a court does not find actual damages, it may award statutory damages under the FDCPA. 15 U.S.C. § 1692k(a)(2)(A); *Baker v. G.C. Services Corp.,* 677 F.2d 775, 780-81 (9th Cir. 1982) (affirming "the district court's conclusion that statutory damages are available without proof of actual damages"). Under the FDCPA, courts awarding statutory damages, which "are akin to a penalty," must consider three factors: "[1] the frequency and persistence of noncompliance by the debt collector, [2] the nature of such noncompliance, and [3] the extent to which such noncompliance was intentional." *Myers,* 543 F. Supp. 2d at 1218 (awarding the plaintiff $2,000.00, or the maximum amount of statutory damages on default judgment) (citing 15 U.S.C. § 1692k(b)(1)); *see also Nelson, LLC,* 522 F. Supp. 2d at 1235-36 (same). However, "[w]hile statutory damages may be available under the FDCPA, they are not automatic." *Jackson v. TeleRecovery,* No. 2:20-cv-01569-KOB, 2021 WL 633212, at *2 (N.D. Ala. Feb. 18, 2021).

Defendant notes that "[n]either Mr. Jackson's complaint nor his affidavit support[ed] an award of statutory damages under the 1692k(b)(1) factors" in the *Jackson* case and argues this Court should arrive at the same conclusion. Oppo. at 7:24-26. Plaintiff replies that "it's clear that Defendant knew that Plaintiff disputed the account because they responded to his dispute on June 16, 2020, sending their alleged verification of the alleged debt per Plaintiff's request." Reply at 5:16-19 (citing Exhibit 7 to Veggian Decl.). Plaintiff argues that this shows "that Defendant's failure to report the dispute in the instance was intentional—and Defendant does not present any argument to the contrary in its

opposition." *Id.* at 5:19-21. He contends that "[b]ecause this is the only account that Defendant is attempting collecting from Plaintiff." *Id.* at 5:21-27. Plaintiff believes Defendant's conduct "evidences that [Defendant] does not have the proper procedure in place for reporting disputes to the CRAs for any of its accounts when it communicates to [consumer reporting agencies or 'CRAs'] in connection with debt it is regularly attempting to collect—which would make the noncompliance both frequent and persistent given the regular nature of its alleged updates and communications with CRAs that it regularly does business with." *Id.* at 5:28-6:5.

Defendant opposes statutory damages by arguing that this case resembles a case relied on by Plaintiff, and pursuant to *Jackson*, the Court should not award statutory damages. Oppo. at 7:17-24. In *Jackson v. TeleRecovery*, the court denied the plaintiff statutory damages on default judgment, despite noting that they are authorized under the FDCPA, because neither the plaintiff's "complaint nor his affidavit support[ed] an award of statutory damages under the § 1692k(b)(1) factors." 2021 WL 633212, at *2. First, "[at most, [the plaintiff]'s affidavit show[ed] that TeleRecovery reported *one* debt disputed by [the plaintiff] without noting that he disputed that debt." *Id.* Thus, "the court [could not] conclude that [the defendant]'s collection efforts were 'frequen[t] or persisten[t].'" *Id.* (citing § 1692k(b)(1); *In re Martinez*, 266 B.R. 523, 537 (S.D. Fla. 2001) (awarding maximum statutory damages to FDCPA plaintiff where defendant repeatedly violated the statute)). Second, the court reasoned that "as to [the plaintiff], 'the nature of [the defendant's] noncompliance' was technical: for example, it did not make harassing phone calls to Mr. Jackson while attempting to collect the debt; it only failed to note to credit agencies that [the plaintiff] disputed the debt." *Id.* Finally, the court found that the plaintiff did not allege, and the record did not show, that the defendant intentionally failed to comply with the FDCPA. *Id.* Because the plaintiff failed to provide support for statutory damages under all three factors, the Court declined to award the plaintiff statutory damages. *Id.*

Here, Plaintiff's complaint alleges that (1) on March 30, 2020, he received a letter to him stating he owed the Alleged Debt; (2) on or about April 2020, he checked his

consumer credit report and noticed the Alleged Debt;  (3) on or about April 29, 2020, he sent a letter to Defendant disputing the Alleged Debt and requesting verification of it pursuant to the FDCPA; and (4) as of August 1, 2020, Defendant had allegedly failed to communicate to Equifax, a consumer reporting agency, that the Alleged Debt was disputed by Plaintiff.  Compl. at 7, ¶¶ 56, 59, 60, 61.  Notably, the Complaint fails to plead that on June 16, 2020, Defendant replied to Plaintiff's request for documentation with a letter responding and providing the requested verification.  Exhibit 3 to Veggian Decl., ECF No. 28-3 at 9-10.  Plaintiff also provides no information in his Complaint or his declaration in support of his reply brief as to whether Defendant eventually remedied its mistake and stopped reporting the debt.   Instead, like *Jackson*, Plaintiff shows that Defendant "reported *one* debt disputed by the plaintiff without noting that he disputed that debt." 2021 WL 633212, at *2.  Thus, like the *Jackson* court, this Court cannot conclude Defendant's collection efforts were frequent or persistent based on the allegations and declaration before it."  *See id.*  As to the second factor, the Court also agrees with the *Jackson* court that "as to [Plaintiff], 'the nature of [the defendant's] noncompliance' was technical: for example, it did not make harassing phone calls to Mr. [Buchannon] while attempting to collect the debt; it only failed to note to credit agencies that [the plaintiff] disputed the debt."  *Id.*  Third, also like *Jackson*, the Complaint does not allege, and the record does not show, that Defendant intentionally failed to comply with the FDCPA.  *Id.*

Thus, as the *Jackson* court did, this Court denies Plaintiff's request for **$1,000.00** in statutory damages.

### 3.   *Costs*

Rule 54(d) of the Federal Rules of Civil Procedure creates a presumption favoring an award of costs to the prevailing party.  *See, e.g., Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 375–76 (2013) ("describing the 'venerable' presumption that prevailing parties are entitled to costs); *see also Oracle USA, Inc. v. Rimini St., Inc.*, 879 F.3d 948, 966 (9th Cir.), *cert. granted*, 139 S. Ct. 52, (2018), and *rev'd in part*, 139 S. Ct. 873 (2019) (noting that *Marx* remains binding precedent on the Ninth Circuit).  Courts may award "taxable

-23-

costs" such as: (1) fees of the clerk and marshal; (2) fees for transcripts; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and copying costs necessarily obtained; (5) docket fees; and (6) compensation of court appointed experts and interpreters.  28 U.S.C. § 1920. Such "[r]easonable out-of-pocket expenses normally charged to a client may be recoverable as attorney fees even if not taxable pursuant to 28 U.S.C. § 1920, so long as those expenses are customarily charged to the client." *Partners for Health & Home, L.P. v. Seung Wee Yang*, 488 B.R. 431, 440 (C.D. Cal. 2012), *aff'd*, 671 F. App'x 475 (9th Cir. 2016). The FDCPA also allows recovery of "the costs of the action." 15 U.S.C. § 1692k(a).

The losing party carries the burden of overcoming the presumption favoring an award of costs to the prevailing party by affirmatively showing a valid reason that the prevailing party is not entitled to costs. *Save Our Valley v. Sound Transit*, 335 F.3d 932, 944-45 (9th Cir. 2003).  In reviewing cost assessments, district courts consider (1) whether the costs are allowable and (2) if so, whether the amount assessed for each item is reasonable. *Majeske v. City of Chicago*, 218 F.3d 816, 824 (7th Cir. 2000); *see also Yumi Ito v. Tokio Marine & Fire Ins. Co., LTD.*, No. CV036835JFWJTLX, 2007 WL 9735847, at *1 (C.D. Cal. Mar. 22, 2007) (citing to *Majeske* for the same proposition).

Here, Plaintiff seeks recovery of the following costs:

| Date: | Description: | Expenses: |
|---|---|---|
| 08/07/2020 | Filing fee | $400.00 |
| 08/11/2020 | Service Fee to KD Process, LLC for service of process. | $30.00 |
| Subtotal: | | $430.00 |

These costs are both (1) allowable and (2) reasonable in amount. *See, e.g., G & G Closed Circuit Events, LLC v. Aguilar*, No. 18-cv-00465-JM-BGS, 2018 WL 6445883, at *3 (S.D. Cal. Dec. 10, 2018) (Miller, J.) (awarding reimbursement of the $400.00 filing fee).  Thus, the Court awards **$430.00** in costs.

### 4.   *Attorney's Fees*

Plaintiff also seeks an award of attorney's fees as the prevailing party under the FDCPA. *See, e.g.,* 15 U.S.C. § 1692k(a)(3) (providing that "[o]n a finding by the court

-24-

that an action under this section was brought in bad faith and for the purpose of harassment, the court may award … attorney's fees reasonable in relation to the work expended and costs"). The FDCPA provides for mandatory recovery of attorney fees because Congress chose to adopt a "private attorney general" approach to ensure enforcement of the FDCPA. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008). As Plaintiff points out, the purpose of these mandatory fees is to encourage attorneys to undertake representation in FDCPA cases, where the amount of attorney's fees incurred in enforcing the statute may far exceed the actual damages to the plaintiff. Mot. at 15:15-23. "These principles [providing for statutory recovery of attorney's fees] apply equally to prevailing parties who obtain a *default* judgment." *Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152, 1158 (9th Cir. 2018). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. Once the Court calculates the lodestar, "other considerations … may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.'" *Vogel*, 893 F.3d at 1158.

Plaintiff asks the Court to apply the lodestar method. ECF No. 12 at 3:21-26. Defendant does not dispute this method of calculation but rather takes issue with the reasonableness of the fees sought. *See generally* ECF No. 14. Thus, the Court applies the lodestar method to determine whether requested fees in a FDCPA case are reasonable. *See, e.g., Ferland v. Conrad Credit Corp.*, 244 F.3d 1145 (9th Cir. 2001) (holding that in a FDCPA case, a "district court must calculate awards for attorney's fees using the 'lodestar' method); *see also Myers*, 543 F. Supp. 2d at 1218-19 (applying the lodestar method to award $29,934.50 in attorney's fees to the plaintiff).

Plaintiff presents three exhibits reflecting hours worked by his attorneys. *See* Exhibit 1 to Mr. Ponder's Declaration in Support of the Motion, ECF No. 28-2 at 4-6; Exhibit 6 to Mr. Cardoza's Declaration, ECF No. 28-4 at 10-14; and Exhibit 7 to Ms. Veggian's Declaration in Support of Plaintiff's Reply, ECF No. 31-1 at 5-7. These invoices show the hours worked by Plaintiff's counsel on this matter, the applicable hourly rate, and

whether the entry has already been reduced or discounted by Plaintiff's counsel.   As outlined below, the Court finds that while Plaintiff is entitled to recover fees, some of the fees, even after Plaintiff's reductions, are duplicative or improper.

### 1. *Reasonable Hourly Rates*

"In establishing the reasonable hourly rate, the Court may take into account: (1) the novelty and complexity of the issues; (2) the special skill and experience of counsel; (3) the quality of representation; and (4) the results obtained." *Kilopass Tech., Inc. v. Sidense Corp.*, 82 F. Supp. 3d 1154, 1170 (N.D. Cal. 2015).  "A reasonable hourly rate is typically based upon the prevailing market rate in the community for 'similar work performed by attorneys of comparable skill, experience, and reputation.'"   *Loomis v. Slendertone Distribution, Inc.*, No. 19-CV-854-MMA (KSC), 2021 WL 873340, at *10 (S.D. Cal. Mar. 9, 2021) (Anello, J.) (quoting *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1211 (9th Cir. 1986) (citing *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984))).

First, Plaintiff seeks recovery of attorney fees for Brian L. Ponder, Esq. ("Mr. Ponder"), who charges $400.00 per hour and represented Plaintiff while the case was pending in the Florida District Court.   Declaration of Brian L. Ponder, ECF No. 28-2 ("Ponder Decl.") at 2, ¶ 6.   Mr. Ponder states that his firm "has incurred a total of $12,500.00 in attorney's fees (i.e., 36.25 hours) and $430.00 in expenses to date, for a grand total of $12,930.00 in attorney's fees and expenses." *Id.* at 2, ¶ 7.  He adds, however, that "[a] reduction of five (5) hours (i.e., $2,000) was taken at arriving at these numbers, including reducing the hours billed for reviewing documents, researching various issues, including clerical work." *Id.*  Mr. Ponder "has experience litigating individual consumer actions involving the FDCPA, as well as the Fair Credit Reporting Act and other consumer protection statutes." Mot. at 18:14-19.  Plaintiff seeks to recover for five (5) hours of work performed by Mr. Ponder, who billed a total of 31.25 hours for himself, at the rate of $400.00 per hour, for a total of $12,500.00 in attorney's fees. *Id.* at 19:14-17 (citing Ponder Decl. 2, ¶¶ 6-7).

Plaintiff also seeks recovery of the attorney's fees incurred after the case was

transferred to the Southern District of California, at which time The Cardoza Law Corporation ("CLC") assumed Plaintiff's representation. Mot. at 17:19-18:13. He seeks fees for the following employees of CLC. Mot. at 17:23-18:13.

First, Plaintiff seeks fees for Michael F. Cardoza, Esq. ("Mr. Cardoza"), a partner with CLC. Declaration of Michael F. Cardoza in Support of Plaintiff's Motion, ECF No. 28-4 ("Cardoza Decl.") at 2, ¶ 1. Mr. Cardoza states his hourly rate of $575.00 per hour is reasonable and commensurate with his experience. *Id.* at 4, ¶ 15. He provides a detailed description of his education and experience. *See id.* at 4-5, ¶¶ 16-24. He indicates he worked 4.6 hours at his hourly rate of $575.00 per hour for a total of $2,645.00 in attorney's fees related to his work on this case. *Id.* at 7, ¶ 30. Second, Plaintiff seeks fees for 34.7 hours of work performed by Lauren B. Veggian, Esq. ("Ms. Veggian"), an associate who charges $475.00 per hour. Veggian Decl., ECF No. 28-3 at 2, ¶ 1. Third, Plaintiff seeks 0.1 hours of or work in attorney's fees for Laura Sanli, a senior legal assistant, at the rate of $95.00 per hour, for a total of $9.50 in attorney's fees. Mot. at 19:6-8 (citing Cardoza Decl. at 6, ¶ 27). Fourth, Plaintiff seeks 2.1 hours of work for Rebecca Han, an ABA certified junior paralegal, at the rate of $125.00 per hour, for a total of $262.50 in attorney's fees. Mot. at 19:8-10 (citing Cardoza Decl. at 4, ¶ 26). Fifth, Plaintiff seeks 3.4 hours of work for Samuel Albert, a senior paralegal, at the rate of $155.00 per hour, for a total of $527.00 in attorney's fees. Mot. at 19:10-12 (citing Cardoza Decl. at 4-5, ¶ 25). In total, the CLC seeks $10,719.00 in attorney's fees. Mot. at 19:12-13 (citing Cardoza Decl. at 5, ¶ 30). These fees break down as follows:

| Timekeeper: | Position: | Hourly Rate: | Number of Hours Requested: |
|---|---|---|---|
| Brian Ponder | Partner | $400.00 | 31.25 |
| Michael Cardoza | Partner | $575.00 | 4.6 |
| Lauren Veggian | Associate | $375.00 | 19.4 (Motion) + 15.3 (Reply) |
| Samuel Albert | Senior Paralegal | $155.00 | 3.4 |
| Rebecca Han | Junior Paralegal | $125.00 | 2.1 |
| Lauren Sanli | Senior Legal Assistant | $95.00 | 0.1 |

*See* ECF Nos. 28-2 at 4-6, 28-4 at 9-14, 16-1 at 5-6.

Defendant opposes the hourly rates sought for Mr. Cardoza and Ms. Veggian as

excessive. Oppo. at 10:8-15. It contends that their rates should be reduced to $525.00 and $325.00 per hour because in *Arriaga v. Nelson Cruz & Associates, LLC*, case no. 3:18-cv-00328-LAB-KSC (S.D. Cal. Jan. 31, 2019) and *Hamm v. FCA US LLC*, 2019 U.S. Dist. LEXIS 141480 at *9 (S.D. Cal. Aug 19, 2019), the court awarded the plaintiff attorney's fees based on an hourly rate of $525.00 per hour for Mr. Cardoza and $325.00 per hour for Ms. Veggian. Oppo. at 10:8-15. Defendant argues that "[l]ittle has changed since that motion to justify a higher hourly rate for Mr. Cardoza and Ms. Veggian in this matter given the simplicity of their work on this case and, as will be discussed below, the work performed in this case was essentially a duplication of the work performed on the *Arriaga* case." *Id.* at 10:15-18. Plaintiff replies by arguing that Ms. Veggian has been promoted to Senior Associate Attorney since the *Arriaga* and *Hamm* cases relied upon by Defendant; is in her sixth year as a California attorney, and seventh year as a New York attorney; and has been the primary litigator on every case for her firm since 2018. Reply at 10:10-21. Thus, Plaintiff contends her increased hourly rate since the *Arriaga* and *Hamm* cases has been well-earned. *Id.* at 10:21-23. As to Mr. Cardoza, Plaintiff responds that he is in his twenty-third year of practice, and since 2018, the cases his firm handles have increased both in number and value. *Id.* at 10:24-11:4. Thus, Plaintiff believes his increased fee of $575.00 "is commensurate to his experience, length of time in practice, and is comparable to other attorneys practicing in the areas of FDCPA, RFDCPA, FCRA, CCRAA, CITA, SCRA—and other consumer protection statues." *Id.* at 10:28-11:4.

The cases relied upon by Defendant are from 2018 and 2019, and the annual inflation rate has been 2.3%, 1.4%, and 5.4% in 2018, 2019, 2020, and 2021 respectively. Thus, based upon previous courts' determinations that the hourly rates of Mr. Cardoza and Ms. Veggian of $525.00 and $325.00 in 2018 and 2019 respectively were reasonable, their rates of $575.00 and $375.00 today are also reasonable in light of inflation:

| | | | Michael Cardoza | | | Lauren Veggian | |
|---|---|---|---|---|---|---|---|
| Year: | Rate of | | Annual Increase Based on Inflation: | New Hourly Rate: | Annual Increase Based on Inflation: | New Hourly Rate: |

| | Inflation[4]. | | | | |
|---|---|---|---|---|---|
| 2019: | 2.3% | $12.08 | $537.08 | $7.48 | $332.48 |
| 2020: | 1.4% | $7.52 | $544.60 | $4.65 | $337.13 |
| 2021: | 5.4% | $29.41 | $574.01 | $18.21 | $355.34 |

The Southern District of California has found hourly rates of $550.00 per hour or higher reasonable for attorneys with partner level experience. *See, e.g., Carr v. Tadin, Inc.,* 51 F. Supp. 3d 970, 980 (S.D. Cal. 2014) (Sammartino, J.) (holding that an hourly rate of $650.00 per hour was reasonable for a partner); *Youngevity Int'l, Corp. v. Smith,* No. 16-cv-00704-BTM-JLB, 2018 WL 2113238, at *5 (S.D. Cal. May 7, 2018) (Burkhardt, J.) ("Courts in this district have held a range of rates from $450-750 per hour reasonable for a senior partner in a variety of litigation contexts and specialties."). Further, the Central District of California recently found a lead counsel's hourly rate, which had been $480.00 in December 2019, and rose to $575.00 in January 2020, reasonable. *Infanzon v. Allstate Ins. Co.,* 335 F.R.D. 305, 314 (C.D. Cal. 2020). That same court also found reasonable his associate's hourly rate, which started at $380.00 in December 2019, and rose to $400.00 in March 2020. *Id.* Similarly, the Court finds the hourly rates sought by Mr. Cardoza and Ms. Veggian in this case reasonable in light of the market rate for firms in Southern California. *See, e.g., Perfect 10, Inc. v. Giganews, Inc.,* 2015 WL 1746484, at *15-*20 (C.D. Cal. Mar. 24, 2015) (holding billing rates of $750-930 for senior partner, $610-$750 for junior partner, and $350-$690 for associates reasonable), *aff'd,* 847 F.3d 657 (9th Cir. 2017); *Eastwood Ins. Servs., Inc. v. Titan Auto Ins. of N.M., Inc.,* 2010 WL 11595919, at *3 (C.D. Cal. Nov. 23, 2010) (finding hourly rates of $775.00 for a partner and $550.00 for an associate are "consistent with the market rate for large, well-respected law firms in

---

[4]   The Court takes judicial notice of these rates, *see* Fed. R. Evid. 201(c)(1), which are public records published by the United States Bureau of Labor Statistics, and are calculated as the total Consumer Price Index ("CPI") for each year. *See* https://www.bls.gov/news.release/archives/cpi_01142020.htm (showing unadjusted CPI percentage change of 2.3%); https://www.bls.gov/news.release/archives/cpi_01132021.pdf (showing the unadjusted annual percentage change of the CPI of 1.4%); https://www.bls.gov/news.release/cpi.nr0.htm (showing unadjusted percent change of CPI as 5.4%); *see also* https://www.usinflationcalculator.com/inflation/current-inflation-rates/.

3:20-cv-02245-BEN-LL

1    Southern California"). The Court evaluates the remaining factors to determine whether
2    they warrant a reduction in the hourly rate.

3                        a.      *Novelty and Complexity of the Issues*

4    The issues litigated are novel and complex; however, this case was also resolved on
5    a default judgment. While more work than usual was done to result in that default
6    judgment, the majority of that additional work was the fault of Plaintiff's own counsel by
7    filing in the incorrect jurisdiction. However, the Court addresses these issues in further
8    detail with respect to whether the hours expended were reasonable.

9                        b.      *Special Skill and Experience of Counsel*

10   Mr. Ponder's declaration states that he has been practicing law for over seven years,
11   and his firm specializes in consumer law, including but not limited to FDCPA cases.
12   Ponder Decl., ECF No. 28-2 at 1-2, ¶¶ 1, 4. Mr. Cardoza has been practicing law for over
13   twenty-two years and has been practicing within the consumer protection arena for
14   nineteen (19) years. Cardoza Decl. at 2, ¶ 5, 3, ¶ 9. Finally, Ms. Veggian has been
15   practicing for approximately six years and has been practicing within the consumer
16   protection area for at least three of those years. *See* Veggian Decl., ECF No. 28-3 at 3, ¶
17   20, 4, ¶ 24. The Court finds that Plaintiff's counsel possesses special skill and experience.

18                       c.      *Quality of Representation*

19   Neither party directly addressed this factor in their briefing. However, the Court
20   finds no reason to detract from the fees on the basis of the quality of representation.

21                       d.      *Results Obtained*

22   Neither party directly addressed this factor in their briefing. However, the Court
23   finds no reason to detract from fees on the basis of the results obtained. Plaintiff's counsel
24   secured a favorable outcome for him.

25   The Court concludes that the requested hourly rates are reasonable. Plaintiff
26   provided no information regarding the qualifications of his administrative assistant, for
27   whose time he also seeks reimbursement. However, the Court finds that to the extent she
28   performed "paralegal-type" work as he alleges, the hourly rate is reasonable. That being

-30-

said, as discussed below, the fees requested for the work performed merit reduction on other grounds.

### 2.   *Plaintiff's Counsel Did Not Expend Reasonable Hours*

Having determined the hourly rate was reasonable, the Court must determine whether the number of hours expended on the case was reasonable.  In seeking attorneys' fees, counsel must exercise proper "billing judgment" and exclude hours that are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434.  District courts must "conduct a … thorough and detailed inquiry concerning application[s] [of a] fee request [to] the twelve factors listed in *Kerr*, particularly with respect to the number of hours reasonably expended by attorneys … and the prevailing fees for work of similar nature and quality in the area." *See Sealy, Inc. v. Easy Living, Inc.*, 743 F.2d 1378, 1385 (9th Cir. 1984) (reversing the district court's award of attorney's fees and remanding for further proceedings).  Some courts have even denied a fee request altogether merely to curb the practice of overreaching with attorney's fees. *See, e.g., Farris v. Cox*, 508 F. Supp. 222, 227 (N.D. Cal. 1981) ("The present situation is an appropriate occasion for the court to exercise its discretion and deny all fees relating to work on the fee petition because the request here represents a grossly inflated bill.").  In demonstrating that their hours are reasonable, counsel "should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity, so the district court can assess the time claimed for each activity." *Norman v. Hous. Auth. of the City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988).

Defendant breaks down the alleged unnecessary services into various categories, which the Court analyzes in turn.  Having determined reductions are warranted, the Court concludes by including a revised version of the invoices provided by Plaintiff's counsel with the appropriate reductions.

### a.   *Alleged Unnecessary Services*

Defendant argues that several of the time entries for Plaintiff's counsel appear

unnecessary. "It is a fundamental principle in cases involving requests for attorneys' fees that the court should not grant compensation for unnecessary work." *Farris*, 508 F. Supp. at 225-26 (citing Canon 2 of the Code of Professional Responsibility of the American Bar Association, Disciplinary Rule 2-106). As outlined below, the Court agrees that certain entries do appear unnecessary.

First, Defendant argues that the 2.1 hours billed by Mr. Cardoza on January 9, 2021 for a "Rule 11 investigation" is unnecessary and unsubstantiated. Oppo. at 15:6-15. Defendant points that "[t]here is no apparent need to conduct any such investigation in this case at that time." *Id.* at 15:7. Additionally, Defendant argues that "this billing entry seems to be standard practice for the Cardoza firm." *Id.* at 15:8. Defendant provides the Court with a declaration from Mr. Cardoza submitted in another case, *Arriaga v. Nelson Cruz & Associates, LLC*, No. 3:18-cv-00328-LAB-KSC (S.D. Cal. 2018), also in support of a motion for default judgment, which likewise included the firm's billing records. *See* ECF No. 30-4 at 9. Indeed, it does appear that in *Arriaga*, Mr. Cardoza also billed as the fourth billable entry a 2.0 hour entry for a Rule 11 investigation. Exhibit 1 to Veggian Decl., ECF No. 30-4 at 9. Plaintiff replies that "[p]rior to accepting an offer to co-counsel the instant case, Plaintiff's California counsel performed a Rule 11 investigation—as is required under ethics rules—to ensure the case was meritorious and not being brought for an improper purpose." Reply at 8:8-10.

Rule 11 of the Federal Rules of Civil Procedure ("Rule 11") provides that whenever an attorney presents a filing to the Court—whether a motion, pleading, or other filing, that attorney certifies that the filing, *inter alia*, (1) is not being presented for an improper purpose, (2) is supported by claims, defenses, and other legal contentions warranted by existing law or a nonfrivolous argument for changing it or establishing new law; and (3) the factual contentions have evidentiary support. Mr. Cardoza claims that as part of the CLC's "practice, a Rule 11 investigation is performed prior to filing or accepting any already filed case in order to ensure that the case [the ]CLC is named as counsel on is meritorious and valid." Reply at 8:10-14. He contends "[t]his requires time, research, and

review of both statutes as well as documents and evidence," and that "[i]t would be unreasonable for an attorney not to perform such an investigation to ensure the meritorious nature of a case prior to filing." Reply at 8:24-25, 14:15-17.

Other courts have reduced fee entries for a pre-suit investigation, which was billed at a partner rate rather than an associate rate. *See, e.g., Rolex Watch United States v. Zeotec Diamonds*, No. CV 02-1089 PSG (VBKx), 2021 U.S. Dist. LEXIS 200238, at *11 (C.D. Cal. Aug. 24, 2021) ("Even assuming it was necessary for an attorney rather than a paralegal to conduct most of the pre-filing investigation and contempt motion drafting, Plaintiff's counsel did not enlist the help of an associate in the matter until it began preparing the instant motion for attorneys' fees."). Further, courts have also reduced pre-suit investigations that lacked sufficient documentation. *See, e.g., Burgos v. Sunvalleytek Int'l*, No. 18-cv-06910-HSG, 2021 U.S. Dist. LEXIS 132931, at *19 (N.D. Cal. May 10, 2021) ("The Court finds that the proximity in time of Plaintiffs' counsel's lawsuits, the similarity in the allegations and legal theories, the nearly identical language in the various complaints, and the lack of specificity in the billing records make a reduction in attorneys' fees for pre-suit investigation and drafting appropriate."). Here, Mr. Cardoza's original 2.1 hour entry for simply "Rule 11 Investigation" contains no explanation whatsoever as to what pleading, motion, or other filing with the Court may have constituted a Rule 11 violation. According to Mr. Cardoza's declaration, he was investigating whether his own client's pleading (as filed by predecessor counsel) may have violated Rule 11, in which case, it was unreasonable to hold Defendant responsible for the fee. Thus, the Court finds this entry unreasonable, unnecessary, and unrecoverable.[5] *See, e.g., Fischer v. SJB-P.D.*

---

[5]   Separate and aside from the necessity of this investigation, Plaintiff's counsel states that they "have made every effort to utilize associate attorneys for as much day-to-day work as possible, thus lowering the hourly attorneys' fee rate, and utilizing the partner for only high-level review prior to filing." Mot. at 19:26-20:1 (citing Cardoza Decl. ¶ 29). Thus, "Ms. Veggian has performed the vast majority of the attorney-necessary work on the instant case, and has delegated non-attorney necessary work to paralegals and legal assistants in an effort to keep attorneys' fees as low as possible since this case was transferred to this Court." *Id.* at 20:1-5 (citing Veggian Decl. ¶ 25). However, they advise

*Inc.,* 214 F.3d 1115, 1121 (9th Cir. 2000) (holding that a district court may reduce hours to offset "poorly documented" billing).

Second, Defendant argues that the 0.5 Ms. Veggian billed on March 19, 2021, for "research and investigation re transfer of venue" was unnecessary. Oppo. at 15:22-23. As Defendant points out, she provides "no explanation for the necessity of this billing given the facts of this case." *Id.* at 15:23-24. Plaintiff replies that "[t]he instant case was the first time [the ]CLC had co-counseled on a case transferred from another venue, and thus[,] research was necessary in order to determine the proper procedural steps to take after such venue transfer." Reply at 8:20-22. Given the Court had ruled on the Motion to Transfer on November 16, 2020, it seems entirely unnecessary for Ms. Veggian to research the transfer of venue issue three months later.

Third, Defendant points out that Ms. Veggian included 1 hour of billing time for her appearance on this Motion, but no hearing took place in this case given the Court took the matter under submission. Oppo. at 16:10-13. In *Arriaga*, the Court similarly submitted the plaintiff's motion for default judgment on the papers, and thus, deducted Ms. Veggian's estimated time to appear at the hearing from her recoverable time. *See, e.g., Arriaga v. Nelson Cruz & Assocs., LLC*, No. 18cv328-LAB (KSC), 2019 U.S. Dist. LEXIS 16660, at *2 (S.D. Cal. Jan. 31, 2019) ("As no hearing was held on this motion, the Court deducts those 2.5 hours…"). Likewise, this Court reduces Ms. Veggian's time by the amount of hours billed for this task.

Fourth, Defendant takes issue with the fact that Mr. Ponder seeks 4.0 hours spent for reviewing Defendant's Motion to Dismiss on September 1, 2020, and 10.0 hours for opposing it on October 2, 2020. Oppo. at 13:3-5. Defendant argues that the Court should not award any time at all for Mr. Ponder to review Defendant's Motion to Dismiss or oppose it given "Mr. Ponder admitted in his Motion to Transfer following the granting of Defendant's motion that he 'did not appreciate the jurisdictional issue in the Northern

---

that while the case was in Florida, Mr. Ponder did not have an associate, and thus, did all the work himself, "so his partner rate was the only available rate." Mot. at 20:5-7.

District of Florida until Defendant raised it.'" *Id.* at 13:13-18. Defendant contends that once Mr. Ponder appreciated the jurisdictional issue, he should then have conceded the issue and filed his Motion to Transfer rather than spending the claimed 14 hours opposing the motion. *Id.* Plaintiff's counsel replies that (1) Defendant is the party responsible for initiating motion practice in the Florida District Court and (2) "Plaintiff, as is reasonable and expected, opposed the motion to dismiss." Reply at 7:5-7. Alternatively, Defendant argues that if the Court awards time for these tasks, it should reduce the time as excessive. Oppo. at 13:7-8.

"Hours expended on unrelated, unsuccessful claims should not be included in an award of fees." *Webb v. Sloan*, 330 F.3d 1158, 1168 (9th Cir. 2003). On the one hand, Plaintiff argues that "for a case where default has been taken and default judgment requested, there has been quite a bit of activity on this case—two motions were filed in Florida, a venue transfer has taken place, and a third motion has been filed in this district." Reply at 2:3-6. On the other hand, Defendant points out that much of the activity in this case arose due to Plaintiff filing suit in the wrong venue, and Plaintiff's counsel later acknowledged that he "did not appreciate the jurisdictional issue in the Northern District of Florida until Defendant raised it." Oppo. at 5:16-20 (citing ECF No. 17 at 3:2-3). Defendant notes that Plaintiff opposed Defendant's Motion to Dismiss for Lack of Jurisdiction despite knowing the jurisdictional arguments were well-grounded. *Id.*

Time spent litigating the fact that Plaintiff's lawsuit was originally filed in the wrong venue was not essential to Plaintiff's success, and in fact, nearly resulted in his entire case being dismissed. The Court finds it would be inappropriate to allow recovery for such fees and reduces Plaintiff's recovery by the fees or time spent pertaining to the jurisdictional/transfer issues. As Defendant points out, Plaintiff filed this lawsuit in Florida even though he lived in California and Defendant was located in Massachusetts. Oppo. at 13:24-26. He contested the motion to dismiss in Florida even though he admittedly appreciated the jurisdictional issue once Defendant raised it. *Id.* at 13:26-14:1. Thus, Mr. Ponder should not be entitled to any time for opposing the motion. *Id.* at 14:1-2.

b.   *Excessive Fees*

Defendant argues that Mr. Ponder's fees are unnecessary and excessive because "(1) his charges for the preparation of the Complaint are excessive; (2) his charges to draft an amended complaint were unnecessary; (3) his charges to review the court order granting the motion to dismiss are excessive; and (4) his charges to draft a motion to transfer the case to the Southern District of California are excessive." Oppo. at 12:11-16.

In *Eiden v. Thrifty Payless Inc.*, 407 F. Supp. 2d 1165, 1169-70 (E.D. Cal. 2005), the court found the one hour of time the plaintiff's lead attorney charged to draft a complaint excessive and ordered it reduced to a third of what the attorney requested. The court noted that plaintiff's counsel had filed numerous complaints that are almost identical, and agreed with the defendant's assessment that the firm seemed "to operate some aspects of its practice by the use of standard legal forms in which the Firm just changes a few details." *Id.* at 1169. In fact, "[t]he wording of some parts of the complaint [was] also almost identical to the wording of a complaint that the Firm authored in *Peters v. Winco Foods, Inc.*, 320 F. Supp. 2d 1035, 1037-38 (E.D. Cal. 2004)." *Id.* at 1169, n.5.

Similar to *Eiden*, Defendant first argues that Mr. Ponder's fees of five (5) hours to review the case file and prepare the complaint are excessive. Oppo. at 12:17-18. Defendant points out that "Mr. Ponder filed a similar lawsuit a week earlier entitled *Buchannon v. LVNV Funding, LLC*, in the Southern District of Texas, case no. 4:20-cv-2700, on behalf of Plaintiff against a different defendant." *Id.* at 12:18-21. Defendant attaches a copy of that complaint as Exhibit 6 to the Declaration of Timothy Johnson in support of the Opposition. *Id.* at 12:21-23. This complaint is almost identical to the one prepared by Mr. Ponder in this case. Additionally, the block billing for this entry fails to separate the time spent for reviewing the case file versus the time spent for preparing the complaint. *See, e.g., Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007) ("It was reasonable for the district court to conclude that Welch failed to carry her burden [of documenting the appropriate hours expended in the litigation], because block billing makes it more difficult to determine how much time was spent on particular activities."). Here, the case file could

-36-

not have been more than 10-20 pages, which should have taken at most 1.0 hour for Mr. Ponder to review. Further, the complaint was only twelve pages and contained no exhibits. *See* Compl. As such, the Court finds that at most, 2.0 hours is appropriate for preparation of the complaint. Thus, the Court reduces this entry by 2.0 hours and limits the hours recoverable to 3.0 hours for a total of $1,200.00.

Second, Defendant argues that the 2.0 hours Mr. Ponder spent drafting the FAC on September 26, 2020 is excessive and unnecessary. Oppo. at 14:3-7. Defendant points out that (1) "the Florida court struck the amended complaint as 'unauthorized,'" and (2) "[t]here is no amended complaint on file presently in this matter." *Id.* Thus, Defendant argues this amount is "totally unnecessary to this case," and Mr. Ponder should not be able to recover any fees for this unauthorized work. *Id.* The Court agrees that given the amended complaint was unauthorized and later stricken, the time spent for drafting it should be reduced given it was not a factor in Plaintiff's success. Thus, the Court reduces it to 1.0 hour.

Third, Defendant argues that the Court should reduce Mr. Ponder's 4.0 hours spent on October 19, 2020 reviewing the Florida court's order granting Defendant's Motion to Dismiss to 0.25 hours. Oppo. at 14:8-13. Defendant contends that first, the billing in and of itself is questionable given the Order did not issue until October 29, 2020. *Id.* However, assuming the date is a typographical error, Defendant also argues that it is unreasonable for an attorney with seven years of experience to spend 4.0 hours to read an order that is four pages in length (that would be one hour per page). *Id.* The Court agrees. It reduces the entry to 1.0 hour, giving Mr. Ponder the benefit of the doubt that his time spent included time reviewing and analyzing the legal authority cited in the order.

Fourth, Defendant argues that the 4.0 hours Mr. Ponder billed on November 9, 2020 for the Motion to Transfer this case, which was a mere four pages is length, is excessive. Oppo. at 14:14-18. The Court agrees. The Court questions whether any fees should be awarded given the Motion to Transfer was only necessary because Plaintiff's counsel filed suit in the wrong venue. However, the Court recognizes that despite his mistake, Mr.

-37-

Ponder did perform work on this matter for which he deserves to be paid, and on that basis, allows 1.0 hour for his work on the motion to transfer as it saved this case from dismissal.

Fifth, Defendant argues that the 8.0 hours Ms. Veggian spent preparing the Motion for Default Judgment on April 26, 28, 29, 30, 2021 and May 3 and 4, 2021 was excessive because "the virtually identical motion had been prepared by Ms. Veggian in the *Arriaga* case." Oppo. at 15:25-16:4. Defendant attaches the Notice of Motion, Motion, and supporting declarations from the *Arriaga* case, *see* Exhibit 1 to Veggian Decl., ECF No. 30-2-30-5. The Motion including the declarations in support of it are virtually identical to those filed in this case. To prepare this Motion, Ms. Veggian only had to insert the facts unique to this case into the Motion and the supporting documents. Defendant argues that "[t]hat minimal amount of work could not reasonably have exceeded 2 hours of her time." Oppo. at 16:4-9. Plaintiff replies that "[t]he prior motion in *Arriaga* that Defendant cites was from 2018, and as such Plaintiff needed to ensure that all of the legal analysis was still accurate, and no major updates had taken place." Reply at 9:3-5. Next, Plaintiff responds that "the effort involved in drafting a case specific motion with heavy fact-based arguments, gathering and organizing exhibits, preparing the invoice for filing, preparing fact-heavy declarations, and ensuring the portions of the motion which apply to Mr. Ponder as well as [the ]CLC are properly drafted is not a simple, short task." *Id.* at 9:5-9. The Court agrees that the time billed is excessive, but giving Ms. Veggian the benefit of the debt that it took more time than Defendant estimates to replace the unique facts and names to this case, update the declarations, and prepare the exhibits, the Court allows 3.0 hours of billable time for this task.

c.     *Meetings and Communications Amongst Counsel and client Communications*

Defendant points out that "[o]ver the approximate[ly] four months that the Cardoza firm has been involved with this case, the only activity has been the taking of the default of Defendant and this Motion for Default Judgment." Oppo. at 16:14-17. However, in this time, "the firm has made 23 billing entries for 'External Co-Counsel Communications' and

-38-

has billed a total of 8.3 hours for those entries." *Id.* Defendant takes issue with the fact that "[t]here has been no explanation regarding the nature of those entries—Mr. Ponder's billing entries show a few emails received but didn't charge for them—or any explanation regarding the volume of the communications." *Id.* at 16:18-20. Defendant also asks the Court to reduce the "16 communications with the client for a total of 3.6 hours" for which Plaintiff offers "no further description of the nature of the communications or their necessity." *Id.* at 16:20-23. Finally, Defendant points out that the CLC "billings list[ ] 10 internal firm communications for a total of 1.9 hours." *Id.* at 16:23-24. Finally, Defendant contends that Plaintiff's counsel failed to provide a persuasive justification regarding the necessity of the many communications—external, internal, and with the client—when the only activity should have been taking the default and preparing this Motion. *Id.* at 17:9-12.

Plaintiff's counsel replies that "[i]t is practice at [their] office to speak to the client as well as the contacting counsel regarding the case to determine whether or not to take on the case." Reply at 9:16-18. They also argue that "[i]t is also responsible lawyering to ensure communications with clients and co-counsels are frequent to ensure all people are on the same page, and all facts/circumstances are understood by all participating counsel and clients." *Id.* at 9:18-20. They contend that to the extent these entries are not documented well enough, that is because "the content of any conversations between co-counsels, internally at [the ]CLC, and between counsel and client are **privileged 100%**, and that privilege does not disappear simply for the purpose of invoicing." *Id.* at 9:20-23. Plaintiff's counsel asserts that "[a]ll communications between co-counsels and between counsel and Plaintiff were reasonable and necessary to have gotten to this point in litigation." Reply at 10:3-8.

"[T]rial courts must carefully review attorney documentation of hours expended; 'padding' in the form of inefficient or duplicative efforts is not subject to compensation." *Quinones v. Chase Bank USA, N.A.*, 2011 U.S. Dist. LEXIS 145199 at *5 (S.D. Cal. Dec. 16, 2011). Thus, "a court may reasonably reduce the hours billed for intra-office conferences if they are unnecessary and duplicative." *Williams v. Cty. of San Diego*, No.

3:17-cv-00815-MMA-JLB, 2021 WL 3619876, at *8 (S.D. Cal. Aug. 16, 2021) (Burkhardt, J.); *see also Welch*, 480 F.3d at 949 (finding hours for intra-office conferences between primary counsel and her colleague reasonably reduced by the district court as "unnecessary and duplicative" given primary counsel's "substantial experience" and "failure to provide a persuasive justification for the intra-office meetings"); *see also Love v. Sanctuary Recs. Grp., Ltd.*, 386 F. App'x 686, 689 (9th Cir. 2010) ("While a district court may reduce a request for 'unnecessary and duplicative' work in 'intra-office conferences,' Love has not presented the court with any case law permitting (let alone requiring) such a reduction where different defendants are represented by different firms that are attempting to coordinate their filings.") (internal citations omitted).

Here, the Court finds it would be inappropriate to reduce time spent on communications with the client and denies that request. *See, e.g., Love*, 386 F. App'x at 689 ("Presumably, Sanctuary's attorneys had an ethical obligation to review the filings independently, meet with their client, and coordinate with the attorneys who were filing a motion on their client's behalf."). As to the external counsel communications between Mr. Ponder and the CLC, the Court notes that in the time sought for those entries, only one firm, not both, sought to recover for that time. However, some of these entries are unexpectedly long. For example, on April 29, 2021, after Ms. Veggian had started preparing the Motion for Default Judgment, she had a 1.10 hour long communication with "external co-counsel." The Court reduces this time entry to 0.5. Finally, the Court notes that there are six "Internal Litigation Planning Conferences." The Court reduces such conferences where billed by more than one attorney. For example, on April 5, 2021, Mr. Cardoza billed at his partner rate of $575.00 per hour, and Ms. Veggian billed at her hourly rate of $375.00 per hour for an internal planning conference that was 0.20 hours. The Court finds this $190.00 entry excessive and allows for Ms. Veggian's time only. *See, e.g., Welch*, 480 F.3d at 949 ("Given her substantial experience and Welch's failure to provide a persuasive justification for the intra-office meetings, the district court did not err in finding the intra-office conferences to be unnecessary and duplicative.").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

d.    _Adjusted Time_

In addition to the issues raised by Defendant, the Court also finds that several of the billing entries submitted by Plaintiff are either duplicative or seek to recover for administrative tasks or time.

"[I]t is appropriate for a district court to reduce duplicative fees when awarding attorney's fees." _Earthquake Sound Corp. v. Bumper Indus._, 352 F.3d 1210, 1219 (9th Cir. 2003); _see also Dowd v. City of Los Angeles_, 28 F. Supp. 3d 1019, 1059 (C.D. Cal. 2014) (reducing the hours billed by 3 hours where the court found the time spent by two different attorneys on a case duplicative and excessive); _Brother v. Miami Hotel Investments, Ltd._, 341 F. Supp. 2d 1230, 1238 (S.D. Fla. 2004) (reducing the fee award for a senior attorney because many of the hours she expended on the case were redundant and the case was not complex enough to require two attorneys, with a junior attorney performing tasks and the senior attorney billing for reviewing the work of the junior attorney).  For example, on February 9, 2021, Mr. Alpert spent 0.50 hours researching "court transfer documents" at his hourly rate of $155.00 per hour, while on March 19, 2021, Ms. Veggian also spent 0.50 researching "transfer of venue" at her hourly rate of $375.00. ECF No. 28-4 at 12-13.  Not only does this research seem duplicative, it is also seems unnecessary given the Court had already rule on this issue four months earlier.  Thus, the Court reduces several time entries shown below where two attorneys or members of the CLC firm billed for the same task.

Courts have also held that attorneys may not seek to recover for administrative tasks or time.  _See, e.g._, _Nadarujah v. Holder_, 569 F.3d 906, 921 (9th Cir. 2009) ("filing, transcript, and document organization time [are] clerical in nature and should [be] subsumed in firm overhead rather than billed at paralegal rates").  Accordingly, "[w]hen clerical tasks are billed at hourly rates, the court should reduce the hours requested to account for the billing errors."  _See, e.g._, _id._ ("noting that "[t]o account for the paralegal's billing of clerical work, the district court fee request is reduced by 6.05 hours at the paralegal's $100 hourly rate, reduced 5 percent by Nadarajah's counsel to $95").  Here,

Plaintiff's counsel billed for administrative type tasks. For example, on January 28, 2021, Samuel Alpert billed 0.20 at his hourly rate of $155.00 to "Receive Document from the Court: Receive Notice of Appearance of Michael F. Cardoza by Lauren Brooks Veggian" and also billed for "save to case folder." ECF No. 28-4 at 11. Receiving documents from CM-ECF or saving them to a case file is an administrative type task that is not appropriate for Mr. Alpert, a paralegal, to bill for at his hourly rate. Thus, the Court reduces time spent—whether by an attorney or administrative assistant—for administrative type tasks.

Taking into account the appropriate areas for reduction and bases for those deductions under the law, the total time sought to be recovered and allowed by the Court is shown below:

| Date: | Description: | Rate: | Hours: | Fees: | Discount: | Subtotal: | Adjusted Amount: |
|---|---|---|---|---|---|---|---|
| 08/07/2020 | Review of case file, drafted/filed complaint/summons/ civil cover sheet. | $400.00 | 5.00 | $2,000.00 | | | $1,200.00[6] |
| 08/10/2020 | Summons received from court; process prepared and sent for service upon defendant to KD Process, LLC. | $400.00 | 0.25 | $100.00 | | | $100.00 |
| 08/31/2020 | Affidavit of service received and filed. | $400.00 | 0.25 | $100.00 | 100% | $0.00 | $0.00 |
| 08/31/2020 | Reviewed 8/27/2020 and 8/31/2020 e-mail from opposing counsel and | $400.00 | 0.25 | $100.00 | | $100.00 | $100.00 |

---

[6]     The Complaint was twelve (12) pages and contained no exhibits. See ECF No. 1. The Court finds that 2.00 at most is reasonable for preparing a twelve (12) page complaint that appears to have been adopted from *Arriaga* for an additional $400.00. Additionally, this is a block billing entry in that it covers both Mr. Ponder's reviewing the case file and his drafting and preparing of the complaint. *See Welch*, 480 F.3d at 948. However, the case file could not have been more than 10 to 20 pages. Thus, the Court finds that 1.0 hour maximum is reasonable for reviewing the case file at $400.00 for a total of $400.00.

| Date | Description | | | | | | |
|---|---|---|---|---|---|---|---|
| | responded on 8/31/2020 by letter. | | | | | | |
| 09/01/2020 | Defendant's motion to dismiss reviewed. | $400.00 | 4.00 | $1,600.00 | | $1,600.00 | $1,600.00[7] |
| 09/01/2020 | Defendant's Motion for Judicial Notice reviewed. | $400.00 | 1.00 | $400.00 | 100% | $0.00 | $0.00 |
| 09/18/2020 | Order (2 pages) requiring response to motion to dismiss reviewed. | $400.00 | 0.25 | $100.00 | 100% | $0.00 | $0.00 |
| 09/26/2020 | Drafted and filed response to Defendant's motion for judicial notice. | $400.00 | 0.25 | $100.00 | | $100.00 | $100.00[8] |
| 09/26/2020 | Drafted and filed Amended Complaint. | $400.00 | 2.00 | $800.00 | | $800.00 | $400.00[9] |
| 09/26/2020 | Drafted and filed Objection to Defendant's Motion to Dismiss. | $400.00 | 0.25 | $100.00 | | $100.00 | $0.00[10] |
| 10/02/2020 | Researched, drafted, and filed Plaintiff's memo in opposition to Defendant's motion to dismiss. | $400.00 | 10.00 | $4,000.00 | | $4,000.00 | $0.00[11] |

[7] Defendant's Motion to Dismiss was six pages. The Court finds it suspect that it would take Mr. Ponder four hours to review it but affords him the benefit of the doubt that some of that time was spent reviewing the legal authority cited in the motion even though such time should have been billed separately.

[8] Plaintiff's Consent to Defendant's Motion for Judicial Notice was one sentence long. However, the Court recognizes that Plaintiff's counsel did not charge for several other entries, and therefore, does not reduce this entry.

[9] The First Amended Complaint was 15 pages plus 28 pages of exhibits. As discussed above, the Court reduces the entry to 1.0 hour.

[10] The objection to Defendant's Motion to Dismiss was one sentence long. Defendant prevailed on the Motion to Dismiss, and the objection was not well-taken. Thus, the fees are not reasonable and are reduced.

[11] The Opposition was 10.5 pages plus 28 pages of exhibits, which appear to be the same exhibits that were attached to the First Amended Complaint. Defendant prevailed on the Motion to Dismiss, and the objection was not well-taken. Thus, the fees are not reasonable and are reduced.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 10/06/2020 | Consent to motion for leave to file reply memo (1.5 pages). | $400.00 | 0.25 | $100.00 | 100% | $0.00 | $0.00 |
| 10/07/2020 | Review Order (2 pages) Granting Leave to Reply. | $400.00 | 0.25 | $100.00 | 100% | $0.00 | $0.00 |
| 10/19/2020 | Reviewed Order Granting Motion to Dismiss. Doc. 16. Reviewed cited cases and law. | $400.00 | 4.00 | $1,600.00 | | $1,600.00 | $400.00[12] |
| 10/30/2020 | Received and replied to email from opposing counsel. | $400.00 | 0.25 | $100.00 | 100% | $0.00 | $0.00 |
| 11/09/2020 | Researched, drafted, and filed motion to transfer case. | $400.00 | 4.00 | $1,600.00 | | $1,600.00 | $0.00[13] |
| 11/10/2020 | Reviewed Defendant's Response (4 pages) to Motion to Transfer. | $400.00 | 0.25 | $100.00 | 100% | $0.00 | $0.00 |
| 11/16/2020 | Reviewed Order (1.5 pages) rescinding in part order on motion to dismiss and granting unopposed motion to transfer. Doc. 19. | $400.00 | 0.25 | $100.00 | 100% | $0.00 | $0.00 |
| 11/16/2020 | Reviewed court doc. 20: interdistrict transfer to USDC for the Southern District of California. | $400.00 | 0.25 | $100.00 | 100% | $0.00 | $0.00 |
| 12/21/2020 | Review doc. 21: case transferred. | $400.00 | 0.25 | $100.00 | 100% | $0.00 | $0.00 |
| 02/16/2021 | Emails with CA counsel re case | $400.00 | 0.25 | $100.00 | | $100.00 | $0.00 |

[12]     This order was four pages long.  This is not a reasonable amount of time for an attorney with approximately seven years of experience to spend reviewing a four page order.  The Court reduces the time to 1.0 hour.

[13]     The Motion to Transfer was four pages long.  Further, the Motion to Transfer would not have been necessary had Plaintiff filed in the correct jurisdiction and venue, and thus, the Court does not find these incurred fees reasonable.  The Court reduces the entirety of the fees sought for this entry.

| Date | Description | Rate | Hours | Amount | % | | |
|---|---|---|---|---|---|---|---|
| | starting 2/11/2021. Reply on 2/16/2021. | | | | | | |
| 03/19/2021 | Emails to CA counsel re case. | $400.00 | 0.25 | $100.00 | 100% | $0.00 | $0.00 |
| 03/22/2021 | Review of and response to emails with CA counsel and analysis of procedural posture issues. | $400.00 | 0.25 | $100.00 | 100% | $0.00 | $0.00 |
| 03/23/2021 | Review of email from CA counsel. | $400.00 | 0.25 | $100.00 | | $100.00 | $100.00 |
| 03/24/2021 | Reviewed request for entry of default. | $400.00 | 0.25 | $100.00 | 100% | $0.00 | $0.00 |
| 04/05/2021 | Reviewed clerk's entry of default. | $400.00 | 0.25 | $100.00 | 100% | $0.00 | $0.00 |
| 04/05/2021 | Emails from and to CA counsel. | $400.00 | 0.25 | $100.00 | 100% | $0.00 | $0.00 |
| 04/06/2021 | Review of emails from CA counsel. | $400.00 | 0.25 | $100.00 | 100% | $0.00 | $0.00 |
| 04/07/2021 | Video conference w/ CA counsel re case. | $400.00 | 0.50 | $200.00 | | $200.00 | $200.00 |
| 04/07/2021 | Emails to and from CA counsel. | $400.00 | 0.25 | $100.00 | 100% | $0.00 | $0.00 |
| **Subtotal for Brian Ponder:** | | | **36.00** | **$14,400.00** | **$4,100.00** | **$10,300.00** | **$4,600.00** |
| 12/29/2020 | External Co-Counsel Communications | $575.00 | 0.80 | $460.00 | | $460.00 | $460.00 |
| 12/29/2020 | Client Communications | $575.00 | 0.20 | $115.00 | | $115.00 | $115.00 |
| 12/30/2020 | New Clio file | $125.00 | 0.10 | $12.50 | 100.0% | $0.00 | $0.00 |
| 12/30/2020 | Documents saved to case files | $125.00 | 0.40 | $50.00 | 100.0% | $0.00 | $0.00 |
| 01/04/2021 | Client Communications | $95.00 | 0.10 | $9.50 | | $9.50 | $9.50 |
| 01/09/2021 | Rule 11 Investigation | $575.00 | 2.10 | $1,207.50 | | $1,207.50 | $0.00[14] |
| 01/09/2021 | Drafting Correspondence | $575.00 | 0.40 | $230.00 | | $230.00 | $230.00[15] |
| 01/09/2021 | Client Communications | $575.00 | 0.20 | $115.00 | | $115.00 | $115.00 |

[14]   As discussed above, this billing entry is not detailed enough to allow the Court to determine whether a 2.10 hour Rule 11 investigation at $575.00 was necessary.
[15]   This billing entry provides no information as to the length of the correspondence or to whom it was addressed.

-45-

| Date | Description | Rate | Hours | Amount | % | | |
|------|-------------|------|-------|--------|---|---|---|
| 01/10/2021 | Internal Litigation Planning Conference: With SA and LV | $575.00 | 0.20 | $115.00 | | $115.00 | $115.00 |
| 01/11/2021 | Receive retainer agreement; saved to case file | $125.00 | 0.20 | $25.00 | 100.0% | $0.00 | $0.00 |
| 01/11/2021 | Client Communications | $125.00 | 0.10 | $12.50 | | $12.50 | $125.00 |
| 01/11/2021 | New Trello list set up | $125.00 | 0.20 | $25.00 | 100.0% | $0.00 | $0.00[16] |
| 01/13/2021 | Client Communications | $125.00 | 0.40 | $50.00 | | $50.00 | $125.00 |
| 01/13/2021 | Internal Communications: LBV | $125.00 | 0.10 | $12.50 | | $12.50 | $12.50 |
| 01/19/2021 | External Co-Counsel Communications | $575.00 | 0.20 | $115.00 | | $115.00 | $115.00 |
| 01/27/2021 | Pro Hac Test for Florida | $375.00 | 0.20 | $75.00 | 100.0% | $0.00 | $0.00 |
| 01/27/2021 | Drafting of Notice(s): Draft, review and revise NOA (LBV) | $155.00 | 0.20 | $31.00 | | $31.00 | $31.00 |
| 01/27/2021 | Drafting of Notice(s): Draft, review and revise NOA (MFC) | $155.00 | 0.20 | $31.00 | | $31.00 | $15.50[17] |
| 01/27/2021 | Filing & Service: File NOA (LBV) | $175.00 | 0.10 | $17.50 | 100.0% | $0.00 | $0.00 |
| 01/27/2021 | Filing & Service: File NOA (MFC) | $175.00 | 0.10 | $17.50 | 100.0% | $0.00 | $0.00 |
| 01/28/2021 | Receive Document from the Court: Receive NOTICE of Appearance by Lauren Brooks Veggian on behalf of NOBLE T BUCHANNON; save to case folder | $155.00 | 0.20 | $31.00 | 100.0% | $0.00 | $0.00 |

---

[16]    This is an administrative task.

[17]    Given Mr. Alpert had already billed a 0.20 for drafting Ms. Veggian's Notice of Appearance, he should have been able to draft and file the identical document for Mr. Cardoza in a 0.1. The Court reduces his time by 0.1.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 01/28/2021 | Receive Document from the Court: Receive NOTICE of Appearance of Michael F. Cardoza by Lauren Brooks Veggian on behalf of NOBLE T BUCHANNON (Veggian, Lauren) from ECF: save to case folder | $155.00 | 0.20 | $31.00 | | $31.00 | $0.00[18] |
| 02/02/2021 | Drafting of Notice(s): Draft, review and revise Ntc. of Errata (NOA MFC) | $155.00 | 0.30 | $46.50 | | $46.50 | $0.00[19] |
| 02/02/2021 | Filing & Service: File Ntc. of Errata (NOA MFC) | $175.00 | 0.10 | $17.50 | 100.0% | $0.00 | $0.00 |
| 02/02/2021 | Filing & Service: File NOA (MFC) | $175.00 | 0.10 | $17.50 | 100.0% | $0.00 | $0.00 |
| 02/02/2021 | Receive Document from the Court: Receive NOTICE of Errata by NOBLE T BUCHANNON re [23] Notice of Appearance (Veggian, Lauren) from ECF; save to case folder | $155.00 | 0.20 | $31.00 | 100.0% | $0.00 | $0.00 |
| 02/02/2021 | Receive Document from the Court: Receive NOTICE of Appearance by Michael Frederick Cardoza on behalf of NOBLE T | $155.00 | 0.20 | $31.00 | | $31.00 | $0.00[20] |

[18]   Mr. Alpert already billed for drafting this document.  Billing for receiving it and saving is an administrative task for which it is inappropriate to seek recovery.

[19]   A notice of errata means a mistake was made in the filing, and Plaintiff should not recover additional time billed due to that mistake.  Thus, the Court excludes this from the recoverable time.

[20]   Mr. Alpert already billed for drafting this document.  Billing for receiving it and saving is an administrative task for which it is inappropriate to seek recovery.

| Date | Description | Rate | Hours | Amount | | | |
|---|---|---|---|---|---|---|---|
| | BUCHANNON (Cardoza, Michael) Attorney Michael Frederick Cardoza added to party NOBLE T BUCHANNON (pty:pla) from ECF; save to case folder | | | | | | |
| 02/03/2021 | External Co-Counsel Communications: Email correspondence with Ponder | $155.00 | 0.10 | $15.50 | | $15.50 | $15.50 |
| 02/03/2021 | External Co-Counsel Communications | $375.00 | 0.20 | $75.00 | | $75.00 | $75.00 |
| 02/03/2021 | External Co-Counsel Communications: Email correspondence with Ponder | $155.00 | 0.10 | $15.50 | | $15.50 | $15.50 |
| 02/03/2021 | External Co-Counsel Communications: Email correspondence with Ponder | $155.00 | 0.10 | $15.50 | | $15.50 | $15.50 |
| 02/03/2021 | Draft, review and revise JPA (lead) | $155.00 | 0.10 | $15.50 | 100.0% | $0.00 | $0.00 |
| 02/03/2021 | External Co-Counsel Communications | $155.00 | 0.70 | $108.50 | | $108.50 | $108.50 |
| 02/03/2021 | External Co-Counsel Communications | $155.00 | 0.20 | $31.00 | | $31.00 | $31.00 |
| 02/03/2021 | External Co-Counsel Communications: Email correspondence with Ponder | $155.00 | 0.10 | $15.50 | | $15.50 | $15.50 |
| 02/09/2021 | Research and Investigation: Research court transfer documents | $155.00 | 0.50 | $77.50 | | $77.50 | $0.00[21] |
| 02/09/2021 | Calendar: Calendar case DL | $155.00 | 0.50 | $77.50 | 100.0% | $0.00 | $0.00 |

[21] As discussed above, Mr. Alpert and Ms. Veggian researched the transfer of the case, when the case had already been transferred. The Court finds this research not only duplicative but also unnecessary.

-48-

3:20-cv-02245-BEN-LL

| Date | Description | Rate | Hours | Amount | | | |
|---|---|---|---|---|---|---|---|
| 02/11/2021 | Client Communications | $375.00 | 0.50 | $187.50 | | $187.50 | $187.50 |
| 02/11/2021 | Review client file | $375.00 | 0.50 | $187.50 | | $187.50 | $187.50 |
| 02/11/2021 | External Co-Counsel Communications | $375.00 | 0.10 | $37.50 | | $37.50 | $37.50 |
| 02/11/2021 | Internal Litigation Planning Conference: MFC | $375.00 | 0.30 | $112.50 | 100.0% | $0.00 | $0.00 |
| 02/11/2021 | Internal Litigation Planning Conference: LBV | $575.00 | 0.30 | $172.50 | | $172.50 | $172.50 |
| 02/12/2021 | Internal Communications: MFC | $375.00 | 0.10 | $37.50 | | $37.50 | $37.50 |
| 02/16/2021 | External Co-Counsel Communications | $375.00 | 0.30 | $112.50 | | $112.50 | $112.50 |
| 02/26/2021 | Client Communications | $375.00 | 0.20 | $75.00 | | $75.00 | $75.00 |
| 03/03/2021 | Client Communications | $375.00 | 0.10 | $37.50 | | $37.50 | $37.50 |
| 03/08/2021 | Internal Litigation Planning Conference: LV, MFC, and RH | $375.00 | 0.30 | $112.50 | | $112.50 | $112.50 |
| 03/08/2021 | Client Communications | $375.00 | 0.20 | $75.00 | | $75.00 | $75.00 |
| 03/08/2021 | Client Communications | $125.00 | 0.20 | $25.00 | | $25.00 | $25.00 |
| 03/09/2021 | Client Communications | $375.00 | 0.10 | $37.50 | | $37.50 | $37.50 |
| 03/09/2021 | Client Communications | $125.00 | 0.70 | $87.50 | | $87.50 | $87.50 |
| 03/09/2021 | Documents saved to case file | $125.00 | 0.20 | $25.00 | 100.0% | $0.00 | $0.00 |
| 03/09/2021 | Client Communications | $125.00 | 0.20 | $25.00 | | $25.00 | $25.00 |
| 03/15/2021 | Client Communications | $125.00 | 0.20 | $25.00 | | $25.00 | $25.00 |
| 03/16/2021 | Review file | $375.00 | 0.50 | $187.50 | | $187.50 | $187.50 |
| 03/17/2021 | Client Communications | $125.00 | 0.10 | $12.50 | | $12.50 | $12.50 |
| 03/17/2021 | Documents saved to case file | $125.00 | 1.00 | $125.00 | 100.0% | $0.00 | $0.00 |
| 03/17/2021 | Internal Communications: MFC | $125.00 | 0.10 | $12.50 | | $12.50 | $12.50 |
| 03/19/2021 | External Co-Counsel Communications | $375.00 | 0.90 | $337.50 | | $337.50 | $337.50 |

| Date | Description | Rate | Hours | Amount | | | |
|------|-------------|------|-------|--------|---|---|---|
| 03/19/2021 | Research and Investigation: re: transfer of venue | $375.00 | 0.50 | $187.50 | | $187.50 | $0.00[22] |
| 03/19/2021 | Internal Communications: LV | $155.00 | 0.20 | $31.00 | | $31.00 | $31.00 |
| 03/22/2021 | External Co-Counsel Communications | $375.00 | 0.30 | $112.50 | | $112.50 | $112.50 |
| 03/23/2021 | External Co-Counsel Communications | $375.00 | 0.40 | $150.00 | | $150.00 | $150.00 |
| 03/24/2021 | Review client file and procedural history | $375.00 | 0.30 | $112.50 | | $112.50 | $0.00[23] |
| 03/24/2021 | External Co-Counsel Communications | $375.00 | 0.30 | $112.50 | | $112.50 | $112.50 |
| 03/24/2021 | Drafting of Motion: request for default | $375.00 | 0.50 | $187.50 | | $187.50 | $281.25[24] |
| 03/24/2021 | Drafting of Pleadings: Review and format RFD | $155.00 | 0.30 | $46.50 | | $46.50 | $0.00 |
| 03/24/2021 | Filing & Service: File/Serve Request for Entry of Default | $175.00 | 0.10 | $17.50 | 100.0% | $0.00 | $0.00 |
| 03/24/2021 | Receive Document from the Court: Receive Request for Entry of Clerk Default against Associated Credit Services, Inc. (Veggian, Lauren) from ECF: save to case folder | $155.00 | 0.20 | $31.00 | 100.0% | $0.00 | $0.00 |
| 04/05/2021 | External Co-Counsel Communications | $375.00 | 0.80 | $300.00 | | $300.00 | $300.00 |

[22]    The Court finds this unnecessary given the case had been ordered transferred three months earlier.

[23]    Given the Court concludes that the only reason a second law firm needed to review the file was because it was filed in the wrong venue in the first place, the Court reduces Plaintiff's counsel's fees for the duplicative review of a client file, which could not have exceeded 20 pages of client documents and a procedural history, which was relatively brief. To the extent the procedural history was complicated, again, that was due to being filed in the wrong venue. Further, Ms. Veggian also billed to review the file on 03/16/2021.

[24]    This document was 1.5 pages; yet, both Ms. Veggian and her legal assistant billed for the drafting and review of this document. The Court finds this to be excessive and allows Ms. Veggian to recover 0.75 for this document.

| Date | Description | Rate | Hours | Amount | % | | |
|---|---|---|---|---|---|---|---|
| 04/05/2021 | Receive Document from the Court: Receive Clerk's ENTRY OF DEFAULT as to ASSOCIATED CREDIT SERVICES INC (All non-registered users served via U.S. Mail Service) (mme) from ECF: save to case folder | $155.00 | 0.20 | $31.00 | 100.0% | $0.00 | $0.00 |
| 04/05/2021 | Internal Litigation Planning Conference: MFC | $375.00 | 0.20 | $75.00 | | $75.00 | $75.00[25] |
| 04/05/2021 | Internal Litigation Planning Conference: LBV | $575.00 | 0.20 | $115.00 | | $115.00 | $0.00 |
| 04/07/2021 | External Co-Counsel Communications | $375.00 | 0.50 | $187.50 | | $187.50 | $187.50 |
| 04/07/2021 | External Co-Counsel Communications | $375.00 | 0.40 | $150.00 | | $150.00 | $150.00 |
| 04/26/2021 | Research and Investigation: re: Motion for Default Judgment | $375.00 | 1.00 | $375.00 | | $375.00 | $0.00[26] |
| 04/28/2021 | Drafting of Motion: for default judgment | $375.00 | 1.50 | $562.50 | | $562.50 | $562.50 |
| 04/28/2021 | External Co-Counsel Communications | $375.00 | 0.20 | $75.00 | | $75.00 | $75.00 |
| 04/29/2021 | Drafting of Motion: for default judgment | $375.00 | 1.50 | $562.50 | | $562.50 | $562.50 |

---

[25]     Both Ms. Veggian and Mr. Cardoza billed for this conference, which the Court finds unnecessary and unwarranted given the defendant had already been defaulted. The Court allows recovery of Ms. Veggian's time but not that of Mr. Cardoza's.

[26]     While Ms. Veggian states she needed to perform research related to the Motion, the Court notes that it is almost identical to one filed 2-3 years earlier, and a paralegal who bills at a lower hourly rate easily could have Shepardized the cases rather than the second highest billing member of the firm. As noted above, the Court excludes this from the almost 8.0 hours of time sought for the Motion for Default Judgment, limiting the time recoverable for the Motion to 3.0 hours total, which is permitted below.

-51-

| 04/29/2021 | External Co-Counsel Communications | $375.00 | 1.10 | $412.50 | | $412.50 | $187.50[27] |
|---|---|---|---|---|---|---|---|
| 04/29/2021 | Internal Litigation Planning Conference: MFC | $375.00 | 0.20 | $75.00 | | $75.00 | $75.00 |
| 04/29/2021 | Review new client docs | $375.00 | 0.10 | $37.50 | | $37.50 | $37.50 |
| 04/29/2021 | Client Communications | $375.00 | 0.10 | $37.50 | | $37.50 | $37.50 |
| 04/30/2021 | Drafting of Motion: for default judgment | $375.00 | 2.00 | $750.00 | | $750.00 | $187.50[28] |
| 04/30/2021 | External Co-Counsel Communications | $375.00 | 0.30 | $112.50 | | $112.50 | $112.50 |
| 05/03/2021 | Drafting of Motion: for default judgment | $375.00 | 1.00 | $375.00 | | $375.00 | $0.00[29] |
| 05/03/2021 | External Co-Counsel Communications | $375.00 | 0.10 | $37.50 | | $37.50 | $37.50 |
| 05/04/2021 | External Co-Counsel Communications | $375.00 | 0.10 | $37.50 | | $37.50 | $37.50 |
| 05/04/2021 | Drafting of Motion: for default judgment - finalize motions, declarations, invoices | $375.00 | 1.00 | $375.00 | | $375.00 | $0.00[30] |
| 05/04/2021 | Filing & Service: motion for default judgment | $175.00 | 0.20 | $35.00 | 100.0% | $0.00 | $0.00 |
| 06/02/2021 | Court/Mediation Appearance: motion | $375.00 | 1.00 | $375.00 | | $375.00 | $0.00[31] |

[27]     The Court questions why a 1.10 hour long communication was needed between counsel for a case in the default judgment stage.  The Court reduces this entry to a recoverable fee of 0.5.

[28]     Ms. Veggian has already billed 3.0 hours for this task related to a nearly identical motion filed in a previous case.  Thus, the Court reduces the amount billed for this task. The Court allows recovery of 3.0 hours total related to the preparation of the Motion, and thus, having already allowed recovery of 1.50 hours, reduces this entry by 0.50.

[29]     Ms. Veggian has already billed 3.0 hours for this task related to a nearly identical motion filed in a previoua case.  Thus, the Court reduces the amount billed for this task.

[30]     Ms. Veggian has already billed 3.0 hours for this task related to a nearly identical motion filed in a previous case.  Thus, the Court reduces the amount billed for this task.

[31]     No hearing took place as the Court took this matter under submission.  The Court reduces this entire amount from the recoverable fees

3:20-cv-02245-BEN-LL

| | for default judgment (estimated) | | | | | | |
|---|---|---|---|---|---|---|---|
| **Subtotal for The Cardoza Law Corporation (Through Motion):** | | | **34.30** | **$11,508.50** | **($789.50)** | **$10,719.00** | **$6,842.25** |
| 05/04/2021 | External Co-Counsel Communications | $375.00 | 0.80 | $300.00 | 100.0% | $0.00 | $0.00 |
| 05/05/2021 | External Co-Counsel Communications | $375.00 | 0.60 | $225.00 | 100.0% | $0.00 | $0.00 |
| 05/05/2021 | Drafting of Motion: Review and revise Mtn. for Default Judgment | $375.00 | 2.50 | $937.50 | 100.0% | $0.00 | $0.00 |
| 05/05/2021 | Filing & Service: File Mtn. for Default Judgment | $375.00 | 0.40 | $150.00 | 100.0% | $0.00 | $0.00 |
| 05/05/2021 | Filing & Service: Send [P]O for Mtn. for Default Judgment to Chambers | $375.00 | 0.10 | $37.50 | 100.0% | $0.00 | $0.00 |
| 05/05/2021 | Receive Document from the Court: Receive MOTION for Default Judgment against Associated Credit Services, Inc., MOTION for Attorney Fees and Costs by NOBLE T BUCHANNON. (Attachments: # (1) Memo of Points and Authorities, # (2) Declaration of Brian L. Ponder, Esq., # (3) Declaration of Lauren B. Veggian, # (4) Declaration of Michael F. Cardoza) (Veggian, Lauren) from ECF: save to case folder | $375.00 | 0.20 | $75.00 | 100.0% | $0.00 | $0.00 |
| 05/06/2021 | Client Communications | $375.00 | 0.20 | $75.00 | 100.0% | $0.00 | $0.00 |
| 05/10/2021 | Client Communications | $375.00 | 0.20 | $75.00 | 100.0% | $0.00 | $0.00 |
| 05/10/2021 | Review appearance of OC | $375.00 | 0.10 | $37.50 | 100.0% | $0.00 | $0.00 |

| Date | Description | Rate | Hours | Amount | % | | |
|---|---|---|---|---|---|---|---|
| 05/10/2021 | External Co-Counsel Communications | $375.00 | 0.10 | $37.50 | 100.0% | $0.00 | $0.00 |
| 05/11/2021 | External Co-Counsel Communications | $375.00 | 1.00 | $375.00 | 100.0% | $0.00 | $0.00 |
| 05/11/2021 | Emails with OC re: case | $375.00 | 0.20 | $75.00 | 100.0% | $0.00 | $0.00 |
| 05/11/2021 | Research and Investigation: re: setting | $375.00 | 0.50 | $187.50 | 100.0% | $0.00 | $0.00 |
| 05/11/2021 | Emails with OC re: setting aside default | $375.00 | 0.50 | $187.50 | 100.0% | $0.00 | $0.00 |
| 05/11/2021 | Receive Document from the Court: Receive NOTICE of Appearance by Timothy P. Johnson on behalf of ASSOCIATED CREDIT SERVICES INC (Johnson, Timothy)Attorney Timothy P. Johnson added to party ASSOCIATED CREDIT SERVICES INC(pty:dft) from ECF: save to case folder | $375.00 | 0.20 | $75.00 | 100.0% | $0.00 | $0.00 |
| 05/13/2021 | Emails with OC re: service list | $375.00 | 0.40 | $150.00 | 100.0% | $0.00 | $0.00 |
| 05/25/2021 | Receive Document from the Court: Receive RESPONSE in Opposition re [28] MOTION for Default Judgment against Associated Credit Services, Inc. Motion for Attorney Fees and Costs filed by ASSOCIATED CREDIT SERVICES INC. (Attachments: # (1) Declaration, # (2) Exhibit, # (3) Exhibit, # (4) Exhibit, # (5) Exhibit, # (6) Exhibit, # (7) Exhibit, # (8) | $375.00 | 0.20 | $75.00 | 100.0% | $0.00 | $0.00 |

-54-

| Date | Description | Rate | Hours | Amount | % | | |
|---|---|---|---|---|---|---|---|
| | Exhibit, # (9) Exhibit, # (10) Exhibit, # (11) Exhibit, # (12) Exhibit, # (13) Exhibit) (Johnson, Timothy) from ECF: save to case folder | | | | | | |
| 05/26/2021 | Client Communications | $375.00 | 0.20 | $75.00 | 100.0% | $0.00 | $0.00 |
| 05/26/2021 | External Co-Counsel Communications | $375.00 | 0.50 | $187.50 | 100.0% | $0.00 | $0.00 |
| 05/26/2021 | Review opposition to motion for default judgment | $375.00 | 0.50 | $187.50 | 100.0% | $0.00 | $0.00 |
| 05/26/2021 | Internal Litigation Planning Conference: With LV | $375.00 | 0.30 | $112.50 | 100.0% | $0.00 | $0.00 |
| 05/26/2021 | Drafting of Motion: reply to oppo to motion for default judgment | $375.00 | 0.70 | $262.50 | | $262.50 | $262.50 |
| 05/27/2021 | Research and Investigation: re: cases cited in oppo to mtn for default j | $375.00 | 0.50 | $187.50 | | $187.50 | $187.50 |
| 05/27/2021 | Drafting of Motion: reply to oppo to mtn for default judgment | $375.00 | 3.80 | $1,425.00 | | $1,425.00 | $1425.00 |
| 05/28/2021 | External Co-Counsel Communications | $375.00 | 0.10 | $37.50 | 100.0% | $0.00 | $0.00 |
| 05/28/2021 | External Co-Counsel Communications | $375.00 | 0.10 | $37.50 | 100.0% | $0.00 | $0.00 |
| 05/28/2021 | Client Communications | $375.00 | 0.40 | $150.00 | 100.0% | $0.00 | $0.00 |
| | | | 15.30 | $5,737.50 | | $1,875.00 | $1,875.00 |
| TOTAL: | | | 70.30 | $31,646.00 | $3,310.50 | $22,894.00 | $13,317.25 |

*See* Exhibit 1 to Ponder Decl., ECF No. 28-2 at 4-6; Exhibit 6 to Cardoza Decl., ECF No. 28-4 at 10-14; Exhibit 7 to Veggian Reply Decl., ECF No. 31-1 at 5-7.

## V.   **CONCLUSION**

For the above reasons, the Court orders that the Clerk of the Court enter judgment in favor of Plaintiff Noble T. Buchannon and against Defendant Associated Credit Services, Inc. in the following amounts:

| Item: | Amount: |
|---|---|
| **Actual Damages:** | $500.00 |
| **Statutory Damages:** | $0.00 |
| Costs: | $430.00 |
| **Attorney's Fees:** | $13,317.25 |
| TOTAL: | $14,247.25 |

**IT IS SO ORDERED.**

DATED:   November *17*, 2021

HON. ROGER T. BENITEZ
United States District Judge